RWALTZER, Judge.

STATEMENT OF THE CASE

Verna Wilson Blair filed suit against Imperial Inn, Inc., d/b/a China Imperial Restaurant (Imperial), for damages allegedly sustained when she slipped and fell on a foreign substance in a restaurant owned and operated by Imperial. Imperial appeals from a judgment rendered on a jury verdict awarding Blair $80,000 for general damages and $3,500 for medical expenses. We affirm.

STATEMENT OF FACTS

On 28 January 1993, Blair, a 66 year old woman, accompanied by her daughters, Ann Brewster and Vanessa Blair, went to the China Imperial Restaurant for dinner. The China Imperial is a full-service restaurant, offering no buffet, salad bar, soup bar or other self-sendee facility. All food is brought by restaurant employees from the kitchen to the patrons’ tables. Blair and her daughter, Vanessa, testified that they had seen waitresses bringing food from the kitchen through the hall that led from the dining area to both the kitchen and the rest rooms. Van Vo, Imperial’s owner, admitted that there was a door from the kitchen to the hallway, but said that the waitresses were instructed to use another kitchen door leading to the front of the restaurant. Blair was a frequent customer, and testified to a familiarity with the premises, having dined there perhaps twice a week. Blair and Brewster testified that as they walked toward the rest room, they left the carpeted area, and walked down a tiled hallway. Some five or six steps into the hallway, Blair fell on a foreign substance, variously described as greasy, crumby, chicken or other food. After her fall, Blair was assisted to her feet by an unidentified New Orleans police officer. At that time, she noticed a greasy substance on the back of her calf and on the toe of her shoe. Blair and Brewster returned to their table, ordered dinner, and Blair asked a restaurant employee to call the manager. The manager spoke with the police officer |2who had helped Blair to her feet, but did not go to Blair’s table. As she left the restaurant, Blah-showed the manager her swollen ankle and asked to file an accident report. He refused, and told Blair her fall had been caused by *152 high heels. Blair’s shoes were introduced at trial, and were flat, ridged rubber-soled leather Gitano shoes, size 7½. The shoes appeared to be fairly new and showed minimal signs of wear. Blair testified that when she left the restaurant she was suffering from head, neck, back, hand and ankle pain.
The next day, she called her lawyer, who referred her to Dr. Gary F. Carroll. Blair was found to have preexisting arthritis, which was first diagnosed ten months after the accident. She had experienced some pri- or pain in her arms and legs, but Blair described this pre-accident pain as intermittent and not severe. Her neck pain arose after the accident. She took insulin to control a diabetic condition.
Dr. Carroll, an expert in internal medicine, testified that he examined Blair the day after the accident. He found tenderness of the right trapezius muscle (neck), with pain and spasm on flexion, extension and rotation. He found soft tissue swelling and tenderness in her right ankle, and pain and spasm related to the right ankle on flexion and extension. He examined her back and found tenderness of musculature at levels LI through L5, with pain and spasm at flexion greater than 45 degrees and extension greater than 5 degrees. Dr. Carroll ordered X-Rays which he testified showed pre-existing neck and lower back scoliosis, and minimal spurring of lumbar bodies, degenerative problems which would not have been known to Blair without X-Ray examination. The X-Ray film of Blair’s ankle showed minimal soft tissue swelling and minimal degenerative spurring of the heel. Dr. Carroll concluded that Blair was suffering bruised muscles and ligaments associated with trauma, which would be responsible for the pain, tenderness and spasm she demonstrated. He prescribed medication for headaches, a non-steroidal anti-inflammatory drug to reduce the pain and spasm, and physical therapy consisting of moist heat to her neck and back. His records show that she took twenty-three therapy treatments. Dr. Carroll testified that her injuries were consistent with trauma sustained in a slip and fall accident such as Blair described. Blair saw Dr. Carroll again on 19 February 1993, 23 April 1993 and 4 June 1993, reporting improvement, but continuing to have pain. She was ^scheduled for an appointment on 16 July 1993, which she failed to keep, whereupon Dr. Carroll discharged her with an uncertain prognosis.
Blair’s attorney referred her to Dr. Harry E. Hoerner, an expert orthopedic surgeon, who examined Blair on 7 June 1993. His examination revealed tenderness to palpation in the posterior of the neck, restricted motion in all directions and no muscle spasm. The right hand revealed tenderness over the outside border, no swelling and good range of motion. Back examination revealed tenderness in the low back, restricted motion and no spasm. Dr. Hoerner also found tenderness, but no swelling, on the outside of Blair’s right ankle. Dr. Hoerner opined that the X-Ray finding of scoliosis of the neck to which Dr. Carroll testified was probably not scoliosis but a trauma-induced spasm of the neck muscle that had temporarily straightened the normal curve in the neck. This condition was no longer evident in the X-Rays taken at Dr. Hoerner’s request. He found evidence of pre-existing asymptomatic narrowing of discs and some spur formation. Dr. Hoerner diagnosed cervical musculoliga-mentous strain (neck strain), a lumbosacral museuloligamentous strain (back strain) with early degenerative disc disease, contusion of the right hand, and sprain contusion of the right ankle. Based on the history Blair gave him, Dr. Hoerner related these conditions to her fall in the restaurant. He prescribed neck and back exercises, heat to those areas, Orudis, an anti-inflammatory medication, and Soma 350, a muscle relaxer. Dr. Hoerner saw Blair again on 12 July 1993 and 2 August 1993, at which times she continued to complain of soreness in her neck, lower back and right leg, and a drawing-up feeling in her right hand. At her 30 August 1993 visit, most of her pain was in the neck, and the examination revealed tenderness and decreased motion in the back without spasm and the drawing-up sensation in her hand. The original treatment continued. On 14 October, she returned to Dr. Hoerner complaining of neck and back soreness, a tingling sensation in her fingers and aching in the toes of her right foot. His examination revealed tenderness and decreased motion in *153 the neck and lumbar back. He prescribed Parafon Fore and Orudis, and advised Blair to undergo an EMG nerve conduction study of the neck and arms. In the EMG test, tiny needles are stuck into the patient’s neck muscles and in the muscles along both arms to measure how quickly an electrical impulse travels between two points or from a nerve to a muscle. The patient receives oral sedation. After her EMG, Blair returned Uto Dr. Hoemer on 18 November 1993, still complaining of neck and low back pain, and showing tenderness and some decreased motion without spasm. Dr. Hoerner told Blair that her EMG results were normal, except for some early peripheral polyneuropathy attributable to her diabetes which would explain the tingling sensation in her fingers. Dr. Hoemer then suggested that Blair undergo an MRI examination of her cervical spine, which was performed on 3 December 1993. The MRI showed osteophytes (bone spurs) projecting posteriorly into the spinal canal from C3 through C7 and flattening the spinal cord at C6. Dr. Hoerner opined that these osteophytes would not necessarily have shown on the X-Rays taken shortly after the accident. Dr. Hoerner testified that although the osteophytes were present before the accident, they did not cause pain. However, a sudden trauma, a twisting, or trauma to the neck causes the osteophytes to become symptomatic, and the stretching of the muscles and ligaments that cover the osteophytes tears the ligaments and causes bleeding and swelling. The soft tissue swelling caused by her fall would initially compress the spinal cord along with the osteophytes, subsequently turning to scar tissue which could continue to put pressure on the area. This scar tissue, according to Dr. Hoerner, resulted from Blair’s fall. Thus, in his opinion, the fall aggravated the degenerative condition and imposed additional injury.
Dr. Hoemer last saw Blair on 18 January 1994, at which time he referred her to Dr. Kenneth Vogel, a neurosurgeon, who saw Blair on 25 February 1994 and recommended conservative care. Blair was advised to return in a few months if her symptoms worsened. Dr. Hoemer’s prognosis was for intractable pain or possibly pain severe enough that Blair would need surgery for the removal of the osteophytes. He testified that she could suffer paralysis of the legs caused by osteophytes pushing on the spinal cord itself. He further testified to a present five to ten percent whole body permanent disability, mainly because of the cord compression caused by the now symptomatic osteophytes. Dr. Hoemer opined that Blair will probably require some periodic care and will probably continue to have pain for the rest of her life. The condition will only worsen as she ages. He also testified that the normal degeneration of the osteophytes was accelerated by the trauma sustained when she fell.
| ¡¡FIRST ASSIGNMENT OF ERROR: Plaintiff failed to satisfy her burden of proving the restaurant owner’s liability for her slip and fall on the restaurant premises in accordance with La.R.S. 9:2800.6.
The Louisiana Supreme Court has recently provided a touchstone for determination of burden of proof issues arising under La.R.S. 9:2800.6 (Merchant’s Liability Law).
These required proof elements are specifically codified in La.R.S. 9:2800.6(B)(2): “The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; ...” Welch v. Winn-Dixie Louisiana, Inc., 94-2331 (5/22/95); 655 So.2d 309, 315.
The Court then reviewed pre-statute jurisprudence and appellate level decisions addressing the burden of proof issue. The Court then set aside the appellate court’s reversal of the jury verdict in favor of the Welches, holding:
In Stobart [v. State of Louisiana Through Dept. of Transportation and development, 617 So.2d 880 (La.1993)], we instructed that reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony or the facts. See Rosell v. ESCO, 549 So.2d 840 (La.1989). This is not to say that a trial court’s factual determination cannot ever be reversed, and in Ambrose v. New Orleans Police Dept. Amb. Serv., 93-3099 (La. 7/5/94); 639 So.2d 216, we clarified that the court of appeal has a constitution *154 al duty to review facts and to determine if the facts support the trial court judgment. However, even if the court of appeal would have decided differently had it been the original trier of fact, the trial court’s judgment should be affirmed unless it is clearly wrong or manifestly erroneous.
Welch v. Winn-Dixie Louisiana, Inc. et al, 655 So.2d at 316.
Upon our review of the entire record below, we cannot conclude that the jury’s verdict and the judgment based thereon were manifestly erroneous or clearly wrong. The facts herein and reasonable inferences drawn therefrom support the jury’s verdict and judgment of Imperial’s liability under La. R.S. 9:2800.6. The record contains sufficient evidence from which the jury could have concluded reasonably that Imperial’s employees caused the material to be on the tiled floor of the hallway that led both to the kitchen and to the rest rooms, which would justify imposition of liability. The jury’s conclusion is supported by the testimony of Blair and her daughters, as well as the photographs and Blair’s shoes which were introduced into evidence.
Blair and Brewster testified that Blair slipped on a greasy substance, perhaps crumbs, perhaps chicken, which was on the tiled floor in the hallway leading to the kitchen and rest rooms. While Imperial’s employees testified concerning its commendable cleaning and inspection |6procedures, the facts of this case do not limit plaintiffs recovery to a showing of constructive or actual notice of the presence of the hazardous material on the floor. There was testimony that the waitresses used this hallway bringing food between the kitchen and dining area. While the owner testified that the waitresses were supposed to use a different access between the kitchen and dining room, the trier of fact is entitled to accept either of two opposing views of the evidence, and such a choice can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d at 845. The evidence is uncontrovert-ed that the Imperial was a full-service restaurant, so there would be no reason for anyone except Imperial’s employees to carry food down the hallway where Blair fell. The jury could conclude reasonably on this record that the greasy material on which Blair slipped fell to the floor from an Imperial employee’s tray or plate and was not noticed or, if noticed, was ignored, to Blair’s peril. The jury properly performed its role as trier of fact and its conclusion is supported by the record, even though another trier of fact may have concluded differently. After a thorough review of the record, we find that the jury was not clearly wrong in finding Imperial liable under the Merchant Liability Act.

SECOND ASSIGNMENT OF ERROR: The trial court’s instructions to the jury on causation and interrogatories were manifestly erroneous.

Counsel for defendant made the following objection on the record:
My only objection is I believe the interrogatories that I had submitted[1] to the Court and requested be read, were appropriate and were better because it referred to specific activity of actions on the part of the parties and given the nature of the injury, not this injury, but the injury in particular, I have certain misgivings about the terminology, cause in fact, and such other things that may not be well understood.
The trial court instructed the jury concerning cause in fact:
To prove her case, plaintiff bears the burden of proving three elements_ Secondly, plaintiff must prove that defendant’s substandard conduct was a cause, in fact, of harm to the plaintiff.... In assessing damages, you must be careful to assess damages only for the degree of aggravation and not for the prior condition itself. ... [Interrogatories to the jury] The second question is, was such negligence a cause in fact of harm to the plaintiff. You answer that yes or |7no. If you answer that no, plaintiff has lost the case, the defendant has won the case, you return to court and you need not answer any further questions.
*155 The trial judge is under no obligation to give any specific jury instructions that may be submitted by either party. Doyle v. Picadilly Cafeterias, 576 So.2d 1148 (La.App. 3d Cir.1991). If the instructions given are fair and reasonably set forth the issues and provide correct principles of law to be applied by the jury to the facts of the case, adequacy of the instructions will be determined by reviewing the jury instructions as a whole. Kennedy v. St. Charles General Hospital Auxiliary, et al, 630 So.2d 888, 896 (La.App. 4th Cir.1993), writ denied 94-0269 (La. 3/18/94); 634 So.2d 863. When instructing the jury, a trial judge is not required to give the precise instructions submitted by either party, but to give instructions consistent with the responsibility to reduce the possibility of confusing the jury. Cuccia v. Cabrejo, 429 So.2d 232 (La.App. 5th Cir.1983), ivrit denied, 434 So.2d 1097 (La.1983). The pertinent question involved in determining error is whether the jury was misled to such an extent as to prevent it from doing justice. Id. We are mindful that appellate courts must exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial. Id.; Brown v. White, 405 So.2d 555 (La.App. 4th Cir.1981), writ granted 409 So.2d 657 (La.1982) and judgment affirmed 430 So.2d 16 (La.1982). Our review of the charge as a whole and of the cause in fact instruction in context shows the instructions to be adequate, and we find no error in the trial court’s instructions and interrogatories to the jury.

THIRD AND FOURTH ASSIGNMENTS OF ERROR: The trial court abused its discretion in failing to grant a new trial, enter remittitur and reform the jury verdict as to the damage award.

Imperial contends that the jury’s award was improper in several respects, arising from Blair’s pre-existing asymptomatic arthritis and degenerative bone spurs. There was no evidence before the jury that Blair suffered any serious symptoms of arthritis or bone spurs before the injury. Imperial’s contention that Blair had a pre-exist-ing cervical scoliosis is contradicted by Dr. Hoemer’s testimony. The record contains uncontroverted evidence that Blair’s pre-ex-isting |8asymptomatic condition was aggravated and the degeneration accelerated by the trauma sustained as a result of her fall at the restaurant. A prognosis of a remaining lifetime of “intractable pain”, the possibility of surgery and paralysis were also before the jury. Imperial presented no contrary medical opinion.
The initial inquiry in reviewing the jury’s award is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indent. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). Only after a finding of abuse of discretion is a resort to prior awards appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993) cert. den. — U.S. -, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co. Inc., 294 So.2d 803 (La.1974).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard, supra, Coco, supra, and Reck v. Stevens, 373 So.2d 498 (La.1979) is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should in *156 crease or reduce the award. Youn v. Maritime Overseas Corp., supra.
The award in this case is not obviously the result of passion or prejudice, and bears a reasonable relationship to the elements of the proved damages. Another rational trier of fact could have decided that a lower award would have been more appropriate, but we cannot conclude from the entirety of the evidence, viewed in the light most favorable to Blair, that a ^rational trier of fact could not have fixed the awards of general damages at the level set by the jury or that this is one of those “exceptional cases where such awards are so gross as to be contrary to right reason.” Youn, supra; Bartholomew v. CNG Producing Co., 832 F.2d 326 (5th Cir.1987). The standard of review for damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages. In effect, the award must be so high or so low in proportion to the injury that it “shocks the conscience.” Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5th Cir.1991). Given the evidence of record herein, we find no abuse of the jury’s great, even vast discretion.

AFFIRMED.

. The suggested interrogatories to the jury are not in the record on appeal.