706 So.2d 480 (1997)
Karyn VIGH
v.
STATE FARM FIRE & CASUALTY INSURANCE COMPANY, Julia Place Ltd. Partnership, Travelers Insurance Company, and Candace Dell and CLM Enterprises, Inc., d/b/a Three D's Cafe.
No. 97-CA-0381.
Court of Appeal of Louisiana, Fourth Circuit.
November 19, 1997.
Opinion Granting Rehearing and Reversing Decision in Part February 11, 1998.
*483 Kevin O'Bryon, Guy D. Perrier, Leake & Anderson, LLP, New Orleans, for Plaintiff/Appellant.
Thomas G. Buck, Metairie, for Defendants/Appellants.
Before BYRNES, JONES and WALTZER, JJ.
JONES, Judge.
Karen Vigh filed suit against State Farm Fire and Casualty Insurance Company, insurer of Julia Place Limited Partnership, et al, for damages allegedly sustained when she slipped and fell on a step located at the entrance/exit of a restaurant owned by Julia Place Ltd. Partnership and operated by Three D's Cafe. Ms. Vigh appeals from a judgment rendered on a jury verdict awarding her $13,250 for general damages and $17,000 for medical expenses.

FACTS
On July 13, 1993, Karen Vigh drove her car and picked up a friend for lunch. They decided to eat at the Three D's Cafe, a place Ms. Vigh had eaten at once before. While they were having lunch, it began to rain. Ms. Vigh noticed that some of her co-workers, who also had lunch at the cafe, were standing in the corridor of the restaurant waiting for the rain to cease. Remembering that she had an umbrella in her car that she did not need because she drove, Ms. Vigh got up from the table and walked towards the exit of the restaurant. She intended to give the umbrella to her co-workers so they could walk back to their nearby office. Ms. Vigh pushed on the exit door, then suddenly fell to the floor, breaking her ankle. Ms. Vigh testified that the events all happened so fast that she is not exactly sure what caused her fall. However, the doorway was elevated from the ground by a narrow, four-inch step and Ms. Vigh contended in her petition that this step was an unreasonable defect in the building and caused her injury.
Ms. Vigh waited for an ambulance and was later driven to the hospital. While at the hospital a medical examination revealed that Ms. Vigh had sustained fractures to her fibula, medial malleolus and tibia. Consequently, she received surgery on the three fractures and had approximately ten screws inserted into her ankle. Her total medical expenses were approximately $16,000.
After surgery Ms. Vigh was told to refrain from putting any weight on the ankle for two months. As a result, Ms. Vigh was confined to the first floor of her home. To accommodate the injury, she had to make a bedroom out of her living room. Also, because the main shower was upstairs, Ms. Vigh had to take "birdie baths," washing herself with a washcloth and washing her hair separately in the sink. After two weeks, Ms. Vigh's sick leave "ran out" and she returned to work to avoid losing any salary. However, because of her injury she could not drive so she had to rely on others, mainly her husband, to drive her to and from work everyday. This driving arrangement lasted until December of 1993.
After the two months had passed, Ms. Vigh's cast was removed and she went to some physical therapy. She saw her doctor on December 21, 1993 and did not return again until April of 1994. After this visit Ms. Vigh did not see her doctor again until August of 1995, when she was having problems with her ankle due to her weight gain resulting from her pregnancy. Although Ms. Vigh has reached maximum medical improvement and is even able to play tennis on a regular basis, she testified that she suffers daily from stiffness in her ankle and can only exercise regularly in a limited capacity compared to her pre-injury activity level. Also, the pictures clearly show that her ankle is permanently disfigured.

DISCUSSION
In the instant case, Ms. Vigh asserted a strict liability claim against State Farm and Julia Place as insurer and owner, respectively, of the defective building. Under a theory of strict liability, Ms. Vigh alleged the tortuous responsibility of the defendants was based upon legal fault, not negligence *484 for her injuries. La.Civ.Code Art. 2317.1 states:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice or defect, only upon showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. (Emphasis added).
Neither knowledge of the defect nor any particular act or omission by the defendants are prerequisites to a finding of liability. Loescher v. Parr, 324 So.2d 441 (La.1975). To prevail at trial, Ms. Vigh need only prove that (1) the thing which caused her injury was within the defendants' care and custody; (2) the thing had a vice or defect (i.e., that it occasioned an unreasonable risk of harm or injury); and (3) her injury was caused by the defect. Id. Once these elements are established, the owner is absolved from such liability only by showing that plaintiff's injury was caused by her own fault, by the fault of some third party or by an irresistible cause or force not usually foreseeable. Id. at 445. In other words, Ms. Vigh must prove by a preponderance of the evidence the step presented an unreasonable risk of harm, which resulted in the injury (i.e., that the step was defective).
The unreasonable risk of harm criterion is not a simple rule of law to apply. It requires a balancing of claims and interests, a weighing of the risk and the gravity of the harm, and consideration of individual and society's rights and obligations. Landry v. State, 495 So.2d 1284 (La.1986) (quoting Entrevia v. Hood, 427 So.2d 1146, 1149 (La. 1983)).
To determine whether a risk is unreasonable, the probability and magnitude of the risk must be balanced against the utility of the step. Hunt v. City Stores, 387 So.2d 585 (La.1980); Bell v. State of Louisiana, 553 So.2d 902 (La.App. 4 Cir.1989). The court cannot consider the fall itself as proof of some unreasonable defect. See Shipp v. City of Alexandria, 395 So.2d 727 (La.1981). In order to qualify as a defect, the imperfection must constitute a dangerous condition or pose an unreasonable risk of injury to a prudent person exercising ordinary care under the circumstances. Orleans Parish School Board. v. City of New Orleans, 585 So.2d 643 (La.App. 4 Cir.1991); Callender v. City of New Orleans, 524 So.2d 136 (La.App. 4 Cir.1988).
In the instant case, Ms. Vigh called an expert, Mr. Ladd P. Ehlinger, to testify that the step violated various building codes and was subject to those codes because of a renovation that occurred in the 1980's. He also testified that the issue of whether the entire building should have been "brought up to code" when the renovations were done was a discretionary decision of the building official. The defense, on cross examination of Mr. Ehlinger, introduced no evidence to support their proposition that the building was in compliance with applicable building codes.
Further, the question of a building defect is not before the Court because State Farm and Julia Place did not answer the appeal. Counsel, in oral argument, argued that his timely filed brief is sufficient to allow appellate review of the jury's determination of liability as to the defect of the building, in spite of his failure to file an answer to the appeal pursuant to the provisions of La C.C.Pr. Art. 2133. We disagree.
An appellee who seeks a modification of the judgment must file an answer to the appeal.
An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer. Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or *485 reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court. If an appellee files such an answer, all other parties to the incidental demand may file similar answers within fifteen days of the appellee's action.

La.C.C.Pr. Art. 2133(A).
Because the above statute discusses both the lodging date and the return date, it is imperative that the Court analyze both dates in determining when the answer to the appeal should have been filed.
The return date is set by the trial court and is 30 days from the date estimated costs are paid without testimony being transcribed or 45 days from the date estimated costs are paid and testimony is transcribed, unless the trial judge fixes a lesser period, or unless additional time is granted by an appellate court. See LSA-C.C.P. 2125. The lodging date is the date the record is lodged in the appellate court.
The appeal was lodged in this Court on February 26, 1997. However, the return date was March 7, 1997. The date that is used to determine when the answer to the appeal should have been filed is the return date because it is the latest to occur. Therefore, State Farm and Julia Place had until March 24, 1997 within which to file an answer to the appeal. Appellee filed a motion for extension of time to file his brief on April 4, 1997, and his motion was granted. This extension did not apply to the return date nor the lodging date. The appellee's brief was filed on April 29, 1997, in accordance with his motion. Therefore, the time for filing his answer to the appeal had expired.
In the case sub judice, the appellee did not file his answer to the appeal but merely incorporated in his brief a demand for modification of the judgment. This is not permissible under the statute. "[A] brief submitted by appellee does not satisfy requirement of appeal or answer to appeal as prerequisite to consideration of issue subsequently asserted in brief". La. C.C.P. art. 2133; Ward v. Schwegmann Giant Super Markets, Inc., 538 So.2d 1051, 1052 (La.App. 4 Cir.1989).
The appellee did file a timely "Notice of Appeal and Answer to Appeal" in the lower court on January 3, 1997, requesting a reversal of the lower court's judgment dismissing Candace Dell and Three D's Cafe from this litigation on October 3, 1996. See LSA-C.C.P. art. 2087(B). Appellee further sought a reversal and/or modification of the lower court's judgment regarding liability. However, appellee failed to include his arguments and authority for both issues in a brief filed with this Court, thereby abandoning both issues. "Because the [appellee] failed to brief or argue the issue of [the improper dismissal of Candace Dell and Three D's Cafe], we consider the issue abandoned." Crifasi v. Crifasi, 650 So.2d 347 (La.App. 4 Cir.1995). "All specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment or error which has not been briefed." Uniform Rules, Courts of Appeal, Rule 2-12.4.
We therefore decline to rule on appellee's claim that Candace Dell and Three D's Cafe were improperly dismissed from this litigation in the lower court because this issue was abandoned. Ward, p. 1052.
Ms. Vigh also assigns as error the question of quantum. Under this claim, the trier of fact is accorded much discretion in fixing general damage awards. The discretion vested in the trier of fact is great, even vast, so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Id. at 1260.
Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under particular circumstances that the appellate court should increase or decrease the award. Youn, 623 So.2d at *486 1261. However, before a damage award may be set aside, the reviewing court must look first, not to prior awards, but to individual circumstances of the instant matter before it. Warren v. Campagna, 96-0834 (La.App. 4 Cir. 12/27/96); 686 So.2d 969, 981. Only after an analysis of the facts and circumstances peculiar to the case at hand can a reviewing court determine if the award is an abuse of the trial court's discretion. Id.
In the instant case, the jury awarded Ms. Vigh $13,250 for general damages and $17,000 for medical expenses, totaling $30,250. Ms. Vigh testified that she had stiffness in her ankle every morning when she woke up. She went on to testify that she had to cut short her walks with her husband sometimes because her ankle would begin to bother her. Also, Ms. Vigh's doctor, Dr. Robert Barrack, testified that she had loss of motion in the plantar flexion as well as the dorsiflexion, which was approximately 80% of normal. He noted that there was an increased risk of early degenerative arthritis of the ankle and that it would be in her best interest to avoid high impact activities such as running or jumping. These are some of the facts Ms. Vigh points to in claiming that the damages awarded were too low under the circumstances. However, that is not the standard. The standard is that the award must be lower than a reasonable trier of fact could find. We do not believe that this award was beyond that which a reasonable trier of fact could have found.
Both parties are in agreement that comparative fault applies, however, they differ as to the percentage of fault that the jury decided on. The defendants argue that Ms. Vigh's injury was caused because of her carelessness in observing where she was walking. They assert that Ms. Vigh had been to the restaurant before and had even walked through the entryway on the day in question, encountering the step when she entered the restaurant. Therefore, she knew that the step was there, but was negligent in her actions. They argue she caused her injury and should be found 100% at fault. However, the trier of fact is owed great deference in its allocation of fault and may not be reversed unless clearly wrong. Clement v. Frey, 95-1119, 95-1163 (La.1/16/96); 666 So.2d 607, 610. A reviewing court may reallocate fault only after it has found an abuse of discretion and then, only to the extent of lowering or raising the percentage of fault to the highest or lowest point. Warren v. Campagna, 96-0834 (La.App. 4 Cir. 12/27/96); 686 So.2d 969, 980. In Watson v. State Farm Fire & Casualty Ins. Co., 469 So.2d 967, 974 (La.1985), the Supreme Court set forth five factors which may influence the degree of fault assigned: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Applying these factors to the instant case, we find that the jury was clearly wrong in finding Ms. Vigh was 35% at fault. There was absolutely no evidence presented for the jury to conclude Ms. Vigh was comparatively at fault. Thus we amend the judgment to delete that portion assessing Ms. Vigh 35% fault.
The final assignment of error raised by Ms. Vigh was that the trial judge erred in his jury instructions, which, in turn, confused the jury. The judge's instruction in question was:
You also heard the term negligence used. Negligence is fault. Fault is negligence. It's interchangeable. Negligence is conduct which falls below that degree of care which we might expect from a reasonable person exercising ordinary care and prudence under the circumstances in which he finds himself. In determining whether a party's conduct was reasonable under the circumstances, you should consider at least three factors:
One, what is the probability that a violation of the duty would cause injury or damages.
Two, a consideration of how serious the harm would be should it occur.

*487 You may consider these and other factors to determine if the parties acted reasonably.
If the conduct was not reasonable under the circumstances, then the parties would be guilty of negligence.
The problem with this instruction was that Ms. Vigh had withdrawn her negligence claim and relied solely on her claim of strict liability. If the jury instructions given are fair and reasonably set forth the issues and provide correct principles of law, adequacy of the instructions will be determined by reviewing the jury instructions as a whole. Blair v. Imperial Inn, Inc., 95-0377 (La.App. 4 Cir. 9/28/95); 662 So.2d 150, 153 (citing, Kennedy v. St. Charles General Hospital Auxiliary, et al, 630 So.2d 888, 896 (La.App. 4 Cir.1993), writ denied, 94-0269 (La.3/18/94); 634 So.2d 863). In looking at these instructions, it appears that the judge may have misstated a principle of law. However, when viewed as a whole, the instructions did not seem to confuse the jury. First, the jury was not presented with a question of negligence in their interrogatories. Second, it appears as though the judge was setting up his instruction on comparative negligence (it followed the negligence instruction). As a result, the judge was defining negligence in this context and stated that fault and negligence were interchangeable because, in fact, people do use the phrases "comparative negligence" and "comparative fault" interchangeably. Therefore, the instruction on negligence was not reversible error. As stated in Blair, 662 So.2d at 155, "[t]he pertinent question involved in determining error is whether the jury was misled to such an extent as to prevent it from doing justice." In the instant case, the jury was not prevented from doing justice.

DECREE
For the foregoing reasons, we amend the judgment of the trial court to delete the assessment to Ms. Vigh of 35% comparative fault, and we affirm the judgment as amended.
AMENDED AND AFFIRMED AS AMENDED.
BYRNES, J., concurs in part and dissents in part.
BYRNES, Judge, concurring in part and dissenting in part.
I respectfully dissent, but only from that part of the majority opinion that would alter the allocation of fault.
Assuming that the four-inch step was a defect does not relieve Ms. Vigh of the responsibility of exercising reasonable care, i.e., the defendant's comparative negligence may still be considered by the jury.
The majority states: "There was absolutely no evidence presented for the jury to conclude Ms. Vigh was comparatively at fault." However, the majority also notes that, "Ms. Vigh had been to the restaurant before and had even walked through the entryway on the day in question, encountering the step when she entered the restaurant." From this alone the jury could have reasonably inferred that, to at least some extent, Ms. Vigh's fall was caused by her failure to see what she could and should have seen.
Therefore, I cannot say after reviewing the record as a whole that the jury was manifestly erroneous in concluding, as it implicitly must have done, that the plaintiff failed to exercise sufficient care in looking where she was going; and the jury having made that implicit finding, I cannot say that the jury abused its considerable discretion in making its allocation of comparative fault.
There is no question that had Ms. Vigh looked she could have seen the step regardless of whether its depth constituted a defect, and regardless of the fact that the step was not preceded by a threshold that would have made it more obvious. Under such circumstances I believe that the great and vast discretion of the jury could have legitimately allocated fault almost from one extreme to the other depending on how they viewed the facts. Finding Ms. Vigh only 35% responsible for not seeing what she could have seen and had, in fact, seen in the past, is not unreasonable.
*488 The plaintiff's expert testified that the step constituted a deviation from code requirements relevant to this injury only because of renovations done to the building in the 1980's. According to the plaintiff's expert, steps such as the one that contributed to Ms. Vigh's fall are permitted to exist and do not violate code requirements if they antedate the enactment of the code requirements (they are effectively grandfathered in) as the step at Three D's Cafe did. However, when renovations are done to such a building it is required the renovations include modification of such steps. It was only when renovations were made to the building in the mid-1980's that the step was considered to be in non-compliance with the code. From the testimony of plaintiff's expert one can reasonably infer that there may be a number of unrenovated buildings with such steps that are not considered to be in violation of code requirements. Where the same step existing today may or may not be in conformity with code requirements depending on the date of the step, it is not the violation of the code that should be looked to as the cause of Ms. Vigh's fall, i.e., to the extent that the step was a cause of Ms. Vigh's unfortunate accident, such causation arises out of the design of the step independent of codal requirements. Codal requirements in this case are just evidence of the standard of step safety. Thus, codal requirements are not dispositive of the question of causation. The fact that the governing authorities have not mandated an immediate correction of all such steps for the purpose of preventing all falls of the nature as that suffered by Ms. Vigh implies that a policy decision was made that such steps do not pose such a grave and certain hazard as would create a presumption of total causation and 100% fault precluding the application of theories of comparative negligence.
Moreover, had the jury inferred, as it probably did, that the plaintiff's own failure to note the cause of her fall at the time it occurred was evidence in itself of some inattention on her part, such an inference would not be so unreasonable or clearly wrong as to constitute manifest error.
Implicit in the position taken by the majority is a requirement of some positive statement by a witness to plaintiff's contributory negligence such as: "The plaintiff wasn't looking where she was going." This is not required. The jury is entitled to draw reasonable inferences from the evidence, and this Court must not second guess such inferences merely because other reasonable inferences might be drawn which this Court finds more to its liking.
Having concluded that the finding of the jury that Ms. Vigh is partially at fault in causing her fall is reasonable, I find no fault with the jury's allocation of that fault. Allocating fault is not an exact science or one precise number. Instead it is an acceptable range and any allocation by the jury within that range cannot be clearly wrong. For example, in Clement v. Frey, 95-1119 (La.1/16/96); 666 So.2d 607, the Supreme Court held that the jury was free to allocate fault anywhere in a range from 50-50 to 75-25. The breath of what was acceptable in Clement was given great latitude, ranging from an equal allocation of fault (50-50) all the way to an allocation in which the fault was 50 percentage points apart (75-25). No wonder the Clement court drew an analogy between the discretion permitted the fact-finder in the allocation of fault and the notoriously broad discretion given the fact-finder in the fixing of general damages.
Only recently, the Supreme Court in Shephard v. Scheeler, 96-1690 (La.10/21/97), 701 So.2d 1308 reiterated its position originally stated in Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987) that deference is due to the trial court not only by virtue of the fact-finder's ability to view the demeanor of witnesses, but also because of the great deference accorded to the trial court fact-finder in Louisiana's three-tiered court system.
Therefore, when complying with the constitutional requirement that I review both the facts and the law on cases that come before this Court, I view the record as a whole through the lens of the deference to the trial court and jury referred to in Shephard and Scheeler, supra.
*489 I am a strong believer in the jury system and I require facts far more compelling than those presented by this case before I can be persuaded to substitute my judgment for that of the juryand I feel that way regardless of the direction in which I would move the allocation of fault were I the initial trier of fact.
For the foregoing reasons, I must respectfully dissent from that portion of the majority opinion altering the jury's finding of comparative fault on the part of Ms. Vigh.
The majority opinion affirms the award of general damages. General damages, like fault, is not an exact science or one exact number. The fact finder is said to have great and even vast discretion in fixing damages within an acceptable range bordered only by what might shock the conscience or offend right reason. In this case I find the award of damages to Ms. Vigh to be at the low end of that range. However, I cannot say that the award is so low as to shock the conscience or to offend right reason. In opinions I have authored where the quantum award seemed to be at the upper limit of the acceptable range, such as Oniate v. Magee, et al., 96-2211 (La.App. 4 Cir. 8/6/97), 697 So.2d 1373, I contended vigorously on behalf of the great and vast discretion of the jury in quantum matters. Now, in the instant case, where I feel that the jury award is at the low end of the acceptable range, I am constrained by the same principles to agree with the decision of the majority to resist the temptation to substitute the higher award I might have made for the low, but not shockingly or unreasonably low, award made by the jury.
For the reasons stated in the previous paragraph, I join with the majority in affirming the award of general damages to the plaintiff. I also join with the majority in the balance of the opinion, with the exception of the issue of fault where I would affirm the jury allocation as explained earlier.
Before BYRNES, LOBRANO, PLOTKIN, JONES and WALTZER, JJ.

ON APPLICATION FOR REHEARING
BYRNES, Judge.
The application for re-hearing filed by the appellee, State Farm Fire and Casualty Company, and Julia Place Limited Partnership was granted and re-argued before a five judge panel.[1] We reverse that portion of our original judgment rendered on November 19, 1997 which altered the allocation of fault as established by the jury in the trial court, and now affirm the judgment of the trial court in full.
Assuming that the four-inch step was a defect does not relieve Ms. Vigh of the responsibility of exercising reasonable care, i.e., the defendant's comparative negligence may still be considered by the jury.
Our original opinion held that: "There was absolutely no evidence presented for the jury to conclude Ms. Vigh was comparatively at fault." However, our original opinion also noted that, "Ms. Vigh had been to the restaurant before and had even walked through the entryway on the day in question, encountering the step when she entered the restaurant." From this alone the jury could have reasonably inferred that, to at least some extent, Ms. Vigh's fall was caused by her failure to see what she could and should have seen.
Therefore, this Court cannot say after reviewing the record as a whole that the jury was manifestly erroneous in concluding, as it implicitly must have done, that the plaintiff failed to exercise sufficient care in looking where she was going. Once we recognize that the jury must have made such a finding, we cannot say that the jury abused its considerable discretion in making its allocation of comparative fault.
Moreover, had the jury inferred, as it probably did, that the plaintiff's own failure to note the cause of her fall at the time it occurred was evidence in itself of some inattention on her part, such an inference would not be so unreasonable or clearly wrong as to constitute manifest error.
*490 There is no question that had Ms. Vigh looked she could have seen the step regardless of whether its depth constituted a defect, and regardless of the fact that the step was not preceded by a threshold that would have made it more obvious. This was not a condition comparable to the proverbial hole in the ground overgrown with weeds waiting invisibly to trap even the cautious, much as the pits dug in the jungle and covered with shrubbery in the old Saturday afternoon movie serials.
The "great, even vast" discretion of the jury in matters of general damages first described as such in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), has been noted so often as to become a cliche. In Clement v. Frey, 95-1119, 95-1163 (La.1/16/96), p. 7-8, 666 So.2d 607, 610-611, the Louisiana Supreme Court noted that quantum determinations, which as just noted employ a standard of "great, even vast" discretion, are analogous to allocation of fault determinations. As this Court recently explained in Riley v. Reliance Insurance Company, et al., 97-CA-0445 p. 6-7 (La.App. 4 Cir. 11/19/97); 703 So.2d 158:
Thus, Clement tells us that the allocation of fault is not an exact science, or the search for one precise ratio. Rather, it is an acceptable range and any allocation by the jury within that range cannot be "clearly wrong." In Clement, the Supreme Court held that any allocation of fault falling between a ratio of 50/50 and 75/25 would be reasonable. This very broad range is illustrative of the analogy referred to in the passage quoted above from Clement, comparing fault and quantum determinations. Mindful that in quantum determinations Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), affords the factfinder "great, even vast" discretion, the Clement analogy mandates this Court to afford considerable latitude to the trial court in matters of fault allocation.
The great breath of what was deemed acceptable in allocating fault in Clement went all the way from a 50/50 allocation of fault where the allocation between the two parties is equal, to a 75/25 allocation of fault, where there is a fifty percentage point difference in the amount of fault allocated between the two parties. It is no wonder that the Clement court saw an analogy between the discretion permitted the fact-finder in the allocation of fault and the "great, even vast" discretion given the fact-finder in the fixing of general damages.
In addition to the deference owed to the jury allocation of fault in this matter, we have been reminded only recently by the Supreme Court in Shephard v. Scheeler, 96-1690 (La.10/21/97), 701 So.2d 1308, when that court reiterated its position originally stated in Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825 (La.1987), that deference is due to the trial court not only by virtue of the fact-finder's ability to view the demeanor of witnesses, but also because of the great deference accorded to the trial court fact-finder in Louisiana's three-tiered court system.
Therefore, when complying with the constitutional requirement that we review both the facts and the law on cases that come before this Court, we should view the record as a whole through the lens of the deference to the trial court and jury referred to in Shephard in addition to the standard of review of fault allocation determinations delineated in Clement.
Applying these standards to the facts of this case the jury could have legitimately allocated fault almost from one extreme to the other because the record permits more than one reasonable inference and it is within the prerogative of the jury to choose among those reasonable inferences. Finding Ms. Vigh only 35% responsible for not being able to explain what happened and not seeing what she could have seen and had, in fact, seen in the past, is not unreasonable. It is not an abuse of the jury's discretion under Clement, and for this Court to rule otherwise would run afoul of Shephard and Virgil.
The plaintiff's expert's testimony that the step constituted a deviation from code requirements is relevant to this injury only because of renovations done to the *491 building in the 1980's. According to the plaintiff's expert, steps such as the one that contributed to Ms. Vigh's fall are permitted to exist and do not violate code requirements if they antedate the enactment of the code requirements (they are effectively grandfathered in) as the step at Three D's Cafe did. Therefore, had there been no renovations to this building in the 1980's, this exact same step would not be in violation of code requirements. However, when renovations are done to such a building, it is required that the renovations include the modification of such steps to bring them into compliance with code requirements. It was only when renovations were made to the building in the mid-1980's that the step was considered to be in non-compliance with the code.
From the testimony of plaintiff's expert, one can reasonably infer that there may be a number of unrenovated buildings with such steps that are not considered to be in violation of code requirements. Where the same step existing today may or may not be in conformity with code requirements depending on the date of the step, it is not the violation of the code that should be looked to as the cause of Ms. Vigh's fall, i.e., to the extent that the step was a cause of Ms. Vigh's unfortunate accident, such causation arises out of the design of the step independent of codal requirements. Codal requirements in this case are just evidence of the standard of step safety. Thus, codal requirements are not dispositive of the question of causation. The fact that the governing authorities have not mandated an immediate correction of all such steps for the purpose of preventing all falls of the nature as that suffered by Ms. Vigh implies that a policy decision was made that such steps do not pose such a grave and certain hazard as would create such an absolute presumption of causation and fault as would preclude the application of theories of comparative negligence. Therefore, even if we accept the testimony of plaintiff's expert at face value, it does not indicate that the jury abused its discretion or warrant this Court to substitute its judgment for the findings made below, and thus does not alter our previously stated conclusion that we find no error in the allocation of fault made by the jury.
In our original opinion we affirmed the damage awards. The $17,000.00 award of medical expenses has not been raised as an issue on this appeal. Although we find the award of $13,500.00 in general damages to be at the low end of the acceptable range, we cannot say that it is so low as to shock the conscience or offend right reason. Therefore, in deference to the great, even vast discretion of the jury, we will not alter the jury award of general damages.
For the foregoing reasons, we reverse that portion of our original opinion amending the trial court's allocation of fault and now affirm the judgment of the trial court in its entirety.
ORIGINAL OPINION OF THIS COURT REVERSED IN PART; JUDGMENT OF THE TRIAL COURT AFFIRMED IN ITS ENTIRETY.
JONES, J., dissents in part and concurs in part.
JONES, Judge, dissenting in part and concurring in part.
While I agree with the majority who affirms the jury's verdict finding liability on the part of Julia Place Ltd., I dissent from the majority's determination that the percentage of comparative fault assessed to Ms. Vigh was appropriate, given the factual circumstances in this matter.
Further, I dissent with regards to the answer to the appeal filed by Julia Place Ltd. because it was not timely.
NOTES
[1] A question was raised concerning the timeliness of State Farm's answer to the appeal, but the plaintiff conceded in oral argument that the answer was timely.