751 So.2d 369 (2000)
Diane KENNEDY and Wilton J. Hebert Jr., Husband of Diane Kennedy
v.
COLUMBUS AMERICA PROPERTIES, L.L.C., in Care of or Through JOSEPH C. CANIZARO INTERESTS, Travelers Insurance Company, et al.
No. 99-CA-0940.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 2000.
*370 Gerald A. Stewart, William A. Glennon, III, Metairie, Louisiana, Attorneys for Diane Kennedy and Wilton J. Hebert, Jr., Husband of Diane Kennedy.
Michael R. Zsembik, Waller & Associates, Metairie, Louisiana, Attorney for Travelers Insurance Co. and Joseph C. Canizaro Interests.
Court composed of Judge CHARLES R. JONES, Judge MOON LANDRIEU, and Judge DENNIS R. BAGNERIS, Sr.
JONES, Judge.
This is an appeal from a judgment granted in favor of plaintiffs, Diane Kennedy (Kennedy) and Wilton J. Herbert, Jr., her husband (Herbert), and against defendants, the Joseph C. Canizaro Interests (Canizaro) and Travelers Insurance Company (Travelers), jointly, severally and in solido. The trial court, in accordance with the jury verdict, awarded plaintiff Kennedy, inter alia, $220,000 for general damages and $102,000 for diminished earning capacity; the trial court also awarded plaintiff Herbert $1,500 for loss of consortium, services and society.

FACTS
On November 1, 1995, Kennedy, a supervisor for DHL, a national delivery service, fell and was injured while making a delivery at Canizaro's office building which Travelers insures. She sustained a fractured dislocation of her ankle and underwent two operations, the first to fuse the ankle and the second to remove the hardware from her ankle. Canizaro and Travelers stipulated to liability as well as to medical expenses and past lost wages. The issues tried before the jury were general damages, impairment to earning capacity and loss of consortium. After a four-day trial, the jury awarded $220,000 in general damages, $102,000 in diminished earning capacity and $1,500 in loss of consortium.
From the awards for general damages and diminished earning capacity only, appellants Canizaro and Travelers take this appeal. They argue that Kennedy failed to carry her burden of proof. They suggest that she failed to show any loss of *371 earning capacity. They also argue that the jury award for general damages was excessive and therefore, an abuse of discretion. In response, Ms. Kennedy requests that this Court affirm the trial court's judgment in all respects and assess costs of the appeal against appellants/defendants.

DISCUSSION

Diminished Earning Capacity Award
Appellants/defendants argue that a finding of some residual disability by itself is insufficient to support the $102,000 award for diminished earning capacity. They also argue that Kennedy did not show that she could have made more money had it not been for her injury.
On the contrary, Kennedy asserts she has a "physical blue-collar job" that has specific physical requirements, and because of her injury she can no longer fulfill those requirements.
Loss of earning capacity is the loss of a person's earning potential; actual loss is not necessarily determinative. Hobgood v. Aucoin, 574 So.2d 344, 346 (La. Nov.08, 1990) (NO. 90-C-0607). Even if the plaintiff's actual earnings have increased, compensation may still be awarded for any impairment of the capacity to earn. Id. "Damages may be assessed for the deprivation of what the injured plaintiff could have earned despite the fact that he may never have seen fit to take advantage of that capacity." Id.
Our review of the record indicates that Kennedy's argument has merit. In Hobgood, the plaintiff was a 36-year-old owner of an oil well service company. He claimed that he could not work as hard because of his back injury. The plaintiff in Hobgood then appealed the First Circuit Court of Appeal's award of $50,000 to plaintiff for loss of earning capacity as inadequate compensation; however, the Supreme Court affirmed the award. The Supreme Court held that "the plaintiff's inability to pursue his business vigorously and energetically as he did prior to injury shows that his ability to earn has been impaired. It is reasonable to conclude that plaintiff could earn more money if he did not have his present physical limitations." Hobgood 574 So.2d at 347. However, the Supreme Court did not increase the award because the record lacked the requisite evidence for determining an appropriate amount.
In the case sub judice, Kennedy, as a 44-year-old supervisor for DHL who had been with the company since 1980, was paid a salary and given annual performance evaluations (based on a scale of 1 to 5, with 5 being the highest score). She received "5s" in the two years prior to the accident and a "4" the year after. Defendants contend that the lower score in productivity shown in Kennedy's 1996 evaluation was due to a decline in job knowledge, communication and organization, not in her physical ability. However this argument is not supported by any specific facts.
In support of the jury's findings, Deanna Theis, a hiring supervisor for DHL called by the plaintiff, testified that Kennedy would not qualify for a position at DHL, given her injury after her second surgery because of the particular physical requirements. Furthermore, unlike in Hobgood (where the court noted that the plaintiff did not call a rehabilitation expert), Kennedy presented testimony of a rehabilitation specialist, Bobby Roberts, who also testified that she could not meet the physical requirements of a functional test.
Finally, Kennedy presented evidence that she applied for a promotion to service manager after her injury, for which she was qualified and trained, but did not get the promotion. Although DHL maintains a policy to promote from within the company, its management hired a man from outside to act as service manager.
Using the Hobgood standard, Kennedy showed that her disability has diminished her earning capacity. She presented to the jury specific evidence of medical experts, *372 vocational rehabilitation experts, and co-workers, unlike in Hobgood, to explain the effect of her disability on her ability to obtain future earnings. Kennedy demonstrated that she cannot pursue or perform her career as vigorously as she did before her injury and thus, her earning capacity is impaired. Thus, it is reasonable to conclude that Kennedy could earn more money if she did not have her present physical limitations and accordingly, her earning capacity has been diminished by her injury.
In order to determine an award for diminished earning capacity, the appropriate inquiry is what plaintiff might have been able to earn. Creel v. LA Pest Control Insurance, 98-146, (La.App. 3rd Cir. 8/5/98), 723 So.2d 440, 446 citing Finnie v. Vallee, 620 So.2d 897, 901 (La.App. 4th Cir. 05/27/93). The trial court should consider how much the injury affects the plaintiff in the workforce but for his injuries and what he may now earn given his resulting condition. In order to determine diminished earning capacity, the facts of the plaintiff's case must be assessed against a variety of factors. Id. In particular, "1) the plaintiff's condition prior to the accident; 2) his work record prior to and after the accident; 3) his previous earnings; 4) the likelihood of his ability to earn a certain amount but for the accident; 5) the amount of work life remaining; 6) inflation; and 7) the plaintiffs employment opportunities before and after the accident." Id.
Under Creel, the plaintiffs lost ability to earn may be compensated even if she does not take advantage of that capacity. Therefore, we find no merit in defendants' argument. We find that Kennedy's earning capacity would be diminished either if she left her present job or if she stayed in her current position. According to Creel, the plaintiffs potential loss of earning capacity in her current position or in a different job is a valid consideration.
Kennedy also notes the applicable standard of review for cases involving diminished earning capacity. She asserts that she presented to the jury a significant number of witnesses, such as Rehabilitation Specialists, Dr. Kewalramani and Bobby Roberts, her treating physician, Dr. Edmond, her co-worker Deanna Theis, and actuarial evidence from Melvin Wolfson, Ph.D. Under the manifest error standard, Kennedy contends that the jury could interpret the evidence in two ways, and therefore the award could not be manifestly erroneous or clearly wrong. Quinones v. U.S. Fidelity and Guaranty Company, 93-1648 (La.1/14/94) 630 So.2d 1303, rehearing denied.
This Court has held that an award for loss of earning capacity requires the presentation of "medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident at issue." Lederer v. Famous Entertainment, Inc., 98-2274 (La. App. 4th Cir. 5/12/99) 732 So.2d 1277, 1289 (J. Murray, concurring), citing Aisole v. Dean, 574 So.2d 1248, 1252 (La.1991). We further stated that:
"Appellate courts may not set aside a jury's finding of fact unless it is clearly wrong. We defer to the jury's reasonable evaluations of credibility and reasonable inferences of fact where there is a conflict in testimony. Furthermore, the jury's choice between two permissible views of the evidence cannot be manifestly erroneous or clearly wrong ... We are instructed that before a factfinder's verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict, and that the record establishes the verdict is manifestly wrong." Lederer, 732 So.2d at 1284.
We found in Lederer that the jury erred in awarding $200,000 in damages for lost earning capacity. The Court stated that plaintiff offered no evidence to establish what he could have earned prior to the accident, or that there was any job for *373 which he became unqualified after the injury, or any actuarial evidence regarding his work life expectancy. The concurrence in Lederer noted that the plaintiff did prove loss of earning capacity because prior to his accident, his job entailed a lot of walking. After the accident, the plaintiff was required to use a walker, and worked more slowly in completing his job tasks. However, the concurring judge agreed with the majority because there was no evidence by which a jury could quantify the proven loss of earning capacity.
In the case sub judice, the jury's award of $102,000 for diminished earning capacity was reasonable based on the facts presented. Under the standards of Hobgood, Creel and Lederer, Kennedy established a link between her injury and impairment to her wage earning capacity. Conversely, the defendants have not shown that the jury verdict was manifestly erroneous or clearly wrong. Moreover, under the manifest error standard, where there is a conflict in the testimony, this Court should defer to the jury's reasonable evaluations of credibility and facts. Given that Kennedy provided substantial evidence and testimony regarding her diminished earning capacity, we find that the record establishes that a reasonable factual basis did exist for the verdict, and that the verdict was not manifestly wrong. Accordingly, this Court finds that the jury did not err in awarding Kennedy $102,000 for diminished earning capacity.

Excessive General Damage Award
The defendants further argue that the effects of Kennedy's ankle injury under these particular circumstances do not warrant the award of $220,000 in general damages. Therefore, they argue that they jury's verdict constitutes an abuse of discretion.
Defendants interpreted Drs. Kewalramani and Edmond's testimony to indicate that Kennedy has displayed indications of premature degenerative arthritis and that there is a potential for a deterioration of the condition of her ankle. Dr. Edmond also testified that the likelihood of any severe degenerative arthritis was diminished because of the quality of precautionary measures taken during the surgery. Dr. Edmond also testified that Kennedy will likely experience a 5% loss of motion in her ankle.
On the contrary, Kennedy argues that the defendants misinterpreted the doctors' testimony. First, she asserts that Dr. Edmond's testimony regarding his diminishment of the onset of degenerative arthritis was a reference to the quality of his surgery and was merely self-laudatory, not an opinion on the actual likelihood of her developing arthritis. Dr. Edmond testified that there is some evidence of degenerative arthritis and that Kennedy "is going to develop some kind of arthritis in the future." Moreover, Dr. Edmond stated that the arthritis will worsen, but he cannot evaluate the severity of the progression.
Second, plaintiff argues that defendants misinterpreted Dr. Edmond's testimony regarding the 5% loss of motion of plaintiff's ankle, and that he actually testified to a 5% disability. Moreover, his disability rating did not take into account the person's profession, physical activity, age or gender. Plaintiff however, contrasts Dr. Kewalramani's testimony that Ms. Kennedy has a disability rating of 22% for the extremity and 9% for the entire body.
"Juries are to be given great, even vast, discretion in matters of general damages." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La., Sept.03, 1993) (NO. 92-C-3017). An appellate court cannot disturb a general damages award unless the trier of fact abused its' discretion in making the award. Vigh v. State Farm Fire & Cas. Ins. Co., 97-0381 (La.App. 4th Cir. 11/19/97), 706 So.2d 480, 485 (reversed on other grounds on rehearing). In determining whether a jury abused its discretion, the award must be "beyond that which a reasonable trier of fact could assess for the effects of the *374 particular injury to the particular plaintiff under particular circumstances that the appellate court should increase or decrease the award." Id.
In Vigh, 706 So.2d at 483, a restaurant customer slipped and fell on steps in front of the restaurant. She suffered fractures to the tibia and fibula in her ankle and experienced stiffness in her ankle every morning. Her doctor testified that she was at an increased risk of early degenerative arthritis and ordered her to avoid high impact activities. The jury awarded the plaintiff $13,250 for general damages and $17,000 in medical expenses, totaling $30,250. The plaintiff appealed arguing that the damage award was inadequate. This Court found that the award of $13,250 was not beyond that which a reasonable trier of fact could have found.
We find this case distinguishable from Vigh for the following factual reasons. Vigh had "an increased risk" of degenerative arthritis, whereas Kennedy already incurred this disability. Moreover, in Vigh, the plaintiff was able to stay home from work in order to recover, but Kennedy had to start working from home the day she returned from the hospital because her boss expected no interruptions in her work responsibilities. Finally, in Vigh, the plaintiff did not complain of work related injuries, whereas Kennedy's ankle injury continued to cause her great pain at work.
Notably, this Court commented in Vigh that the award was at the lower end of the acceptable range of general damages. Although $220,000 seems to be at the high end of the range, the effects of this particular injury on this particular plaintiff must be examined. Kennedy established the existence of degenerative arthritis and that she suffered great pain after her surgery and while she was working. Her operations caused scarring and may require follow-up surgery. Moreover, considering her previous active lifestyle and her physically demanding job, Kennedy has demonstrated past, present and future pain and suffering as well as loss of lifestyle, mental anguish and disability. There is no evidence in the record, which suggests that the jury abused its discretion in awarding Kennedy $220,000 in general damages. Therefore, this Court finds that the $220,000 general damage award was not excessive.

DECREE
For the foregoing reasons, we find that the jury's verdict was reasonable in light of the facts presented. Therefore, this Court affirms the jury's verdict, and the trial court's judgment in all respects. We further award to the plaintiff those additional costs that were incurred as a result of this appeal.
AFFIRMED.