| t LOVE, Judge.
This case is on appeal from the Twenty-Fifth Judicial District Court for the Parish of Plaquemines. The jury found in favor of the plaintiffs awarding Darlene Rogers $160,124 and awarding Carol Barnes $716,767 in damages. The jury additionally apportioned fifty percent of the fault to the plaintiff, Carol Barnes. The plaintiffs’ post trial motion for judgment notwithstanding the verdict was granted and the trial judge re-apportioned fault to twenty percent for Carol Barnes’ actions and eighty percent to the defendants.
The plaintiffs appeal the apportionment of fault by the jury and the re-apportionment of fault by the judge stating that the defendant was solely hable for the accident. The plaintiffs additionally appeal the amount of damages awarded both plaintiffs as insufficient. The defendant, State of Louisiana, appeals the granting of the judgment notwithstanding the verdict and the re-apportionment of fault. The defendant prays that the jury’s verdict be reinstated in which fault was divided equally. The defendant does not appeal the amount of damages or the finding of liability. We affirm the granting of the judgment notwithstanding the ^verdict. Furthermore, we re-apportion fault, award loss of earning capacity to Darlene Rogers and affirm the award of damages.
STATEMENT OF THE CASE
On July 22, 1996 Carol Barnes (Ms. Barnes) drove to her sister Darlene Rogers’ (Ms. Rogers) home so that Ms. Rogers could accompany her on a trip to the shopping mall in Gretna, Louisiana. After Ms. Rogers and her five-month-old son went shopping with Ms. Barnes, the three began their return to Ms. Rogers’ home in Empire, Louisiana. While driving south on Louisiana Highway 23, Ms. Barnes encountered a portion of the highway with a severe crack or bump in the middle. In an effort to avoid what she believed to be a dangerous condition in the roadway, Ms. Barnes pulled her passenger tires slightly off the road and onto the shoulder. While trying to return her wheels to the roadway, Ms. Barnes hit an unexpected drop off on the shoulder. She then lost control of her Kia Sephia and hit a Cadillac, driven by Ms. Mildred Farmer on the other side of the yellow divider line.
Ms. Barnes and Ms. Rogers suffered severe injuries as a result of the collision. Leroy Cosse attended to Ms. Barnes, who was trapped inside the vehicle, immediately following the accident. He testified that Ms. Barnes’ legs were trapped and that she would periodically scream. Ms. Rog *500 ers, who was located in the passenger seat, testified that she could not see her sister’s legs while seated right next to her. Ms. Rogers also testified that she could see her sister’s face covered in blood.
Angela Dugar, who arrived thirty minutes after the accident, was the first Emergency Medical Technician on the scene to assist Ms. Barnes. She attended Ms. Barnes as the car door was being cut off. Ms. Dugar testified that Ms. Barnes’ | ..¡legs had been split open and that Ms. Barnes injuries were the worst obvious injuries she had ever seen.
When Carol Barnes reached the hospital in Port Sulphur, she was in shock. Her blood pressure was low and her heart rate was high. After she was stabilized, she was transported by helicopter to West Jefferson Medical Center. Ms. Barnes had several surgeries and went through extensive physical therapy. Ms. Barnes’ right femur was fractured and exposed; her left femur was fractured; her right and left tibia were fractured; her left knee was split open; her left eye, forehead, and neck were severely injured and remain scarred; and Ms. Barnes sustained damage to her teeth and required partial plates. In the future, Carol Barnes will likely require additional surgical procedures to both her face and legs. In addition, due to the severity of her injuries, Ms. Barnes has some permanent disability and may never be able to have children. Ms. Barnes is terribly depressed and has a very bleak outlook for her future.
Ms. Rogers was also injured. Ms. Rogers received a severe injury to her ankle, which required two surgeries and extensive hardware to be placed in her body. Ms. Rogers also has trauma-induced arthritis and will require corrective surgery in the future. Ms. Rogers remains in tremendous pain and may require surgery in the near future to remove the painful hardware. In addition to her physical injuries, Ms. Rogers sustained severe emotional trauma, as she feared for the safety of herself, her sister, and her son.
Plaintiffs alleged that the shoulder of the road presented an unreasonably dangerous condition and demanded recovery based on negligence and strict liability. After a trial on the merits the jury found in favor of the plaintiffs. The Injury found the D.O.T.D. was negligent because it had a duty to the plaintiffs, which it then breached by failing to properly maintain the roadway.
The evidence showed that Ms. Barnes was not speeding at the time she lost control of her car. Evidence adduced at trial also determined that there was a drop off on the shoulder for the approximately one-hundred and forty (140) foot stretch traveled by Carol Barnes. The drop off varied from as little as two inches to as much as eight inches. One of the more substantial drop offs was as long as two feet. According to the Department of Transportation Parish Maintenance Supervisor, Frank Oser, the D.O.T.D. requires immediate repair when there is a greater than five inch drop off present in the shoulder. D.O.T.D. employees testified and work orders showed that the Department of Transportation was aware of problems with the shoulder in that area and had previously made repairs in the general vicinity. Additionally, Department of Transportation policy requires inspections of all roadways every two weeks.
Robert Cappiello, who lived in the curve for over sixty years, testified that there had been problems before in that curve and that he had seen many cars lose control the same way Ms. Barnes had. Also, Deputy Bruce Smith stated that he had covered several accidents in the same location.
The jury awarded damages as follows:
*501 Darlene Rogers Carol Barnes
1. past and future pain $70,000 $200,000
2. past and future mental anguish $35,000 $200,000
3. past medical costs $23,124 $116,048
4. future medical costs $32,000 $ 55,000
5. loss of past earnings $ 0 $ 22,719
Is6. diminished earning capacity $ 0 $123,000
The jury determined that the amount of damages for both should be reduced by fifty percent due to the fault of Carol Barnes.
Carol Barnes and Darlene Rogers make the following assignments of error: 1) the jury erred by failing to award an adequate amount of damages to Darlene Rogers and Carol Barnes; 2) the jury erred by apportioning fifty percent of the fault to Carol Barnes; and 3) the trial judge erred by finding that Carol Barnes was twenty percent at fault. D.O.T.D asserts that the trial judge erred by granting the J.N.O.V. and re-apportioning fault.
J.N.O.V.
Louisiana Code of Civil Procedure Article 1811 provides the procedural requirements for a judgment notwithstanding the verdict. Article 1811 does not, however, establish the basis upon which a J.N.O.V. should be granted.
Louisiana courts have held that a J.N.O.V. should be granted only when the “facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict.” Selico v. Intercontinental Bulktank Corp., 98-0763 (La.App. 4 Cir. 05/12/99), 733 So.2d 1240, 1245, writ denied 99-1713 (La.9/24/99), 747 So.2d 1124, cert. denied 528 U.S. 1188, 120 S.Ct. 1241, 146 L.Ed.2d 100 (2000) (quoting Anderson v. New Orleans Public Service, 583 So.2d 829, 832 (La.1991)). The trial court cannot, however, substitute its own judgment for that of the jury. Boudreaux v. Schwegmann Giant Supermarkets, 585 So.2d 583, 585 (La. App. 4 Cir.1991).
The trial judge in his reasons for judgment stated that he believed that it was unreasonable to hold Carol Barnes fifty percent at fault. She was driving normally, within the speed limit. The trial judge held that Carol Barnes’ behavior was 1 (¡merely inadvertent. Also in the judge’s reasons for judgment, he stated that though he believed it was reasonable that Carol Barnes was absolutely not at fault, he could not on a motion for judgment notwithstanding the verdict absolve Ms. Barnes of fault. Instead his only option was to re-apportion fault to the maximum amount found in case law for an inadvertent driver, twenty-percent.
A trial judge has the power to re-apportion fault only when the standard for granting a J.N.O.V. has been met. Boudreaux, 585 So.2d at 585. Additionally, the trial court must consider the facts in the light most favoring the party opposing the motion. Id. at 586. We find no error in the trial court’s determination that an inadvertent driver could not possibly be 50% at fault. Therefore, we affirm the trial court’s grant of the J.N.O.V.
ALLOCATION OF FAULT
Plaintiffs sued D.O.T.D. based on theories of negligence under La. Civil Code Article 2315 and strict liability under . La. Civil Code Article 2317. Negligence and strict liability have been separated *502 historically by the notice requirement for a finding of negligence. Jones v. Hawkins, 98-1259 (La.3/19/99), 781 So.2d 216. However, because strict liability for public bodies is governed by La.Rev.Stat. 9:2800, the burden of proof is the same under either a strict liability or negligence standard. Specifically, Louisiana Revised Statute 9:2800 requires that the D.O.T.D. have actual or constructive notice of the defective condition. The plaintiff must therefore, show 1) the shoulder was in the custody and control of the defendant; 2) the shoulder was defective and created an unreasonable risk of harm; 3) D.O.T.D. had actual or constructive notice of the defect; and 4) the defect caused the plaintiffs harm. Bessard v. Dept. of Trans. & Development, 94r-0589 (La.11/30/94), 645 So.2d 1134,1136 (citations omitted).
|7In this case, the D.O.T.D. does not dispute any the elements of the finding of liability. Highway 23 had several dips along the road where Barnes was driving. Additionally, there were defects in the shoulder in that same area. The D.O.T.D had a policy of repairing dips in the shoulder of at least two inches, according to Gasper Dinicola, a D.O.T.D. Engineer and Tech Supervisor of thirty years. Any dip of five inches or more required immediate attention and repair. The dip in the shoulder at issue here was approximately eight inches and therefore required immediate attention. The D.O.T.D was in the area in question, but failed to follow their own policy to immediately repair dips of greater than five inches. Therefore the only issue is whether Carol Barnes’ conduct rose to a level that would alleviate the defendant of part of its burden. Louisiana courts generally find comparative negligence where the plaintiffs conduct is fairly egregious.
In Bessard, 645 So.2d 1134, the Louisiana Supreme Court upheld the trial court’s findings that the D.O.T.D. was solely liable to the plaintiff after she fell in a hole on the curb. The court found that the D.O.T.D. had custody of the curb and had at least constructive knowledge because of the bi-weekly inspections the department was required to make. Additionally, the court held that the curb represented an unreasonable risk of harm. The court believed that Ms. Bessard acted as a reasonably prudent pedestrian, under the circumstances.
Conversely, in Aetna Casualty & Surety Co. v. Dept. of Trans. & Development, 97-0716 (La.App. 1 Cir.1998), 712 So.2d 216 the Louisiana First Circuit reversed all liability attributed to the Department of Transportation. The court stated that the sole cause of the accident had been the plaintiffs actions. The plaintiff was not merely inattentive, but also speeding and intoxicated. Similarly, the court adjusted the apportionment of fault in Brown v. Louisiana Indemnity Co., 97-1344 (La.3/4/98), 707 So.2d 1240. In Broum, the driver of the vehicle allowed his wheels to leave the road when he fell asleep at the wheel. The court held that the road condition presented an unreasonable risk of harm. The court re-apportioned fault to the driver from twenty five percent to seventy five percent. The court focused on the nature of the conduct of each party and believed that he conduct of the plaintiff alleviated the defendant of part of his liability.
In apportioning fault, we are guided by the Louisiana Supreme Court in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985). The Court set forth five factors to be considered: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) the extent of the risk created by the conduct; (3) the significance of what was sought by the *503 conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any-extenuating circumstances which might require the actor to proceed in haste, without proper thought.
In the present case, the defendant claims that plaintiffs negligence caused the accident because she “missed the curve and ended up on the shoulder.” This is an incorrect characterization of what was demonstrated at trial by the uncontradict-ed testimony of one of the plaintiffs and the expert witnesses. The plaintiff performed a perfectly legitimate evasive maneuver when she veered slightly onto the shoulder in order to avoid another defective condition in the road. According to Dinicola, the shoulder serves several purposes in order to protect the safety of drivers. Therefore, drivers have an expectation that the shoulder would allow them to utilize the shoulder to escape a potential accident or severe road condition.
laThe defendant also alleges in its brief that Carol Barnes was not exercising reasonable care because she attempted to reenter the roadway at an excessive rate of speed and without attempting to stop or slow down. Netecke v. Dept. of Trans. & Development, 98-1182 (La.10/19/99), 747 So.2d 489. It has already been established that Ms. Barnes was not traveling at an excessive rate of speed when she left the roadway. Additionally, Louisiana State Trooper Arrid Hansell, who investigated the scene of the accident, testified that there were indications that Ms. Barnes had attempted to stop or slow down because there were brake marks along the roadway. Trooper Hansell investigated the scene the day of the accident.
Considering the facts before us and the factors enunciated in Watson, 469 So.2d 967 at 974, we conclude that the trial court committed manifest error in assigning Ms. Barnes 20% Lability. We find that the record clearly supports that Ms. Barnes bears no fault for the accident that occurred. She swerved to miss the pothole in an effort to avoid a potentially dangerous situation. Nonetheless, Ms. Barnes still suffered injury due to the D.O.T.D.’s failure to repair the obviously hazardous highway shoulder. Accordingly, we re-apportion fault and assign 100% fault to the D.O.T.D.
DAMAGES

Physical and Mental Pain and Suffering

The plaintiffs also assign error to the amount awarded in damages because they are too low. Specifically, the plaintiffs challenge the award for loss of future earning capacity for Darlene Rogers and the awards for past and future mental and physical pain for both plaintiffs. Although we concede that the damages awarded to both plaintiffs is considerably meager in comparison to the injuries that they | msustained, pursuant to the stringent standard of appellate review, we must affirm the award of damages awarded by the trial court.
Plaintiffs argue that the jury erred because it did not award sufficient damages for pain and suffering or permanent disability. We must first determine whether the damages awarded to the plaintiffs were grossly inadequate based on the nature of the injuries suffered. Lederer, 732 So.2d 1277, 1287. The trial court has much discretion when awarding damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1998). When determining if a damage award should be overturned the court must first ask whether the award is an abuse of discretion after looking at the specific injuries in this case. Youn, 623 So.2d at 1260 (citations omitted). Only if there has been an abuse of discretion after considering the specific *504 facts of the case can the appellate court look to other cases. Id. Therefore, the appellate court should rarely disturb a damage award. Youn, 623 So.2d at 1261.
The reviewing court must view the evidence in the light most favorable to the party against whom the judgment would affect. Clement v. Griffin, 91-1664 (La.App. 4 Cir. 03/03/94), 634 So.2d 412, 442. Therefore in this case we must view the facts in the light most favorable to the defendant. After it has been determined that there has been an abuse of discretion, the appellate court can increase the amount of the award to the lowest reasonable amount within the discretion of the trier of fact. Id.
Both women were very badly hurt and received some level of permanent disability. In addition, the accident was a very emotionally traumatic event. Carol Barnes received severe injuries to her face and legs. She suffered through two surgeries to her legs in which she had plates, screws and rods placed into them. She spent approximately one month in the hospital. She initially was confined to a Inwheel chair for a time, but later moved to crutches for a few months. Furthermore, she suffered an infection as a result of the pins placed in her legs. Ms. Barnes endured months of physical therapy in order to learn how to walk again. Additionally, Ms. Barnes toes have become clawed as a result of the accident. Dr. Matthew Grimm, the plaintiffs orthopedic surgeon, testified that they tried unsuccessfully to correct her toes with exercise, but she would require surgery to correct this state. Though Dr. Grimm restricted her walking only to as tolerated, he stated that Ms. Barnes would require a cane off and on for the rest of her life. Dr. Grimm also stated that Ms. Barnes would be restricted to sedentary work and could not lift more than ten pounds or do much walking. Carol Barnes additionally suffered injuries to her face. Several of her teeth were knocked out, which required that she get false teeth. Her dentist, Dr. Leon Flett-rich, testified that she will require additional dental work to correct other problems caused by the accident. Ms Barnes’ plastic surgeon testified that she performed surgery to reduce the scar on Ms. Barnes’ forehead and to correct a torn muscle in her eye. Dr. Hamid Massiha stated that Ms. Barnes would require additional facial surgery because she cannot close her eyes completely. Also, the scars on Ms. Barnes legs cross the joint so bending is very difficult. Dr. Massiha testified that because the scars are painful, it would be necessary for Ms. Barnes to have three to five surgeries on each leg to alleviate the pain.
Ms. Barnes testified that she suffered from deep emotional trauma. She stated that she cannot be intimate with her husband. Ms. Barnes and her husband both testified that they had planned to have children prior to the accident. They both also testified that this may not be possible because of her physical injuries. Ms. Barnes additionally testified that she is mentally slower and cannot remember | ^many things. She feels that she has no future and stated during her testimony that she wishes she had died in the accident. Carol Barnes was only twenty-nine years old at the time of the accident and had a promising future in the career she loved as a Certified Nurse Assistant.
This court must decide if the plaintiff was properly compensated the only way the system allows, monetarily. The jury awarded Ms. Barnes $400,000 in general damages $200,000 to cover past and future mental pain and $200,000 to cover past and future physical pain. General damages are awarded based on evidence showing physical pain and suffering, *505 inconvenience, loss of intellectual gratification, or physical enjoyment and other losses of life or lifestyle. Hoskin v. Plaquemines Parish Gov’t, 97-0061 (La.App. 4 Cir. 12/1/97), 703 So.2d 207, 213. The court can also consider concern for inability to fulfill family responsibility, the effect of the accident on the marital relations, the effect on personal esteem, and the mental anguish suffered as a result of the accident. Youn, 623 So.2d at 1261. This court also must consider the age of the victim at the time of the accident as a significant factor in the amount of damages awarded. See Hoskin, 703 So.2d 207.
Carol Barnes is a young woman who was severely and permanently injured. Obviously, from the detailed accounting of her injuries, her life has been permanently altered by this tragic event. Based upon Ms. Barnes’ injuries and the applicable case law, we find no error in the award of damages.
We must now consider the damage award for Darlene Rogers. Ms. Rogers suffered debilitating injuries, though not as severe as her sister’s. Darlene Rogers was in traction for four days before surgery was performed. She had an external fixator and pins, plates and screws inserted in her ankle. She suffers from post-traumatic arthritis as a result of her injuries. She also has damage to the joints in |1Rher ankle and foot. Dr. Seltzer, Ms. Rogers’ orthopedic surgeon, testified that Ms. Rogers will require possibly two additional surgeries, but will always walk with a limp.
Darlene Rogers still suffers from pain and hears a popping or clicking sound coming from her ankle. Ms. Rogers currently suffers a twenty-five percent disability in her ankle, which could increase depending on the condition of her joints after removal of the hardware. Dr. Seltzer also testified that Ms. Rogers will only be able to do sedentary work for the rest of her life. She was only twenty-five years old at the time of the accident.
Ms. Rogers’s five-month-old son was also a passenger in the car. Though he suffered no physical injuries, his mother had to endure his screams coming from the back seat of the car. Ms. Rogers suffered emotional distress not only because of the pain and stress of the accident, but also because of the time she lost with her child. Darlene Rogers was unable to care for her child due to her injuries. At the time of trial, Ms. Rogers’ son was an active two-year old. She testified that she is unable to take her son outside because she can not run after him and ensure his safety. We find that the jury did not abuse its discretion by awarding Ms. Rogers $105,000 in general damages.
We find that the award is appropriate for the nature of injuries that Ms. Rogers suffered and the effect that this accident will inevitably have upon her and her son’s life. Therefore, we affirm the award of damages to Ms. Rogers.

Loss of Earning Capacity

Darlene Rogers further claims that the jury erred when it failed to award any damages for lossr of earning capacity. In order to show that there is a loss of li4earning capacity, the plaintiff need only show “medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident at issue.” Kennedy v. Columbus America Properties, L.L.C. ex rel. Joseph C. Canizaro Interests, 99-0940 (La.App. 4 Cir. 1/12/00), 751 So.2d 369 (citing Lederer v. Famous Entertainment, Inc., 98-2274 (La.App. 4 Cir. 5/12/99), 732 So.2d 1277, 1289, writ denied 99-1707 (La.9/24/99), 747 So.2d 1123). The plaintiff submitted medical evidence, which the defendant does not *506 dispute, that she has a permanent physical disability that was caused by the accident.
We believe that the trial court committed manifest error when it did not award Ms. Rogers loss of earning capacity. Ms. Rogers did not have to be employed at the time in order to be eligible. Further, we feel that the testimony was clear that Ms. Rogers’ earnings have been permanently affected by this accident. Therefore, Ms. Rogers has satisfied this minimum requirement for loss of earning capacity. The court of appeal can review the record and determine the amount of the plaintiff’s damages according to the previously stated guidelines, citing Hob-good v. Aucoin, 574 So.2d 844, 346 (La. 1990).
Now that we have determined that Ms. Rogers has suffered a loss of earning capacity, the amount must be measured monetarily. It is difficult to calculate an exact amount to award for loss of earning capacity. The court must take into account the plaintiffs prior mental and physical condition, work record and prior earnings, the amount of work life remaining, inflation, employment opportunities before and after the accident, and the ability to earn but for the accident. Harvey v. Traylor, 96-1321 (La.App. 4 Cir. 2/5/97), 688 So.2d 1324, 1332 (citing Finnie v. Vallee, 620 So.2d 897 (La.App.Cir.4, 1993)). Because these calculations are | ^difficult to establish, a Forensic Economist is generally necessary to make these types of calculations. Id.
Ms. Rogers was unemployed at the time of the accident. Only five months prior to the accident, she had given birth to her son and wanted to stay home with him. Ms. Roger also had not previously held a job with any significant income. It is not disputed that Ms. Rogers had no lost wages. However, the measure of diminished earning capacity is not how much the plaintiff actually lost. Kennedy v. Columbus America Properties, LLC, 99-0940 (La.App. 4 Cir. 01/12/00), 751 So.2d 369, 371. The measure of loss of earning capacity is the level of the plaintiffs earning potential. Id. at 371 (citing Hobgood, 574 So.2d 344, 346) (emphasis added).
Darlene Rogers was twenty-five years old at the time of the accident; therefore she was very early in her working life. She had previously attended community college where she studied Computer Information Technology. However, she had not held any job paying over minimum wage. She had worked as a sales clerk and a pharmacy assistant, both of which required standing for most of the day. It is undisputed that Ms. Rogers will likely not advance in her education and will likely remain a low wage earner for most of her life. She is now restricted to jobs where she can sit for the greater portion of the day and is not required to do much bending or lifting. Because of her physical limitations, there are not many opportunities for Darlene Rogers in the small town where she lives.
Initially, the plaintiffs called Thomas Meunier, a Vocational Rehabilitation Counselor to establish that Darlene Rogers had suffered some level of permanent physical disability. The plaintiffs then called in Dr. Melville Wolfson to attempt to calculate Ms. Rogers’ loss of earning capacity. He estimated a loss of between |1fi$43,200 to $64,800. The defendant’s Vocational Rehabilitation Counselor and Economist agreed that Ms. Rogers had a loss of earning capacity. Mr. Kenneth Boudreaux calculated Ms. Rogers loss of earning capacity at as little as $29,950 and as much as $66,000.
Additional testimony at trial determined that Ms. Rogers was not going to attempt to find employment until her son turned five years old. Thus, Ms. Rogers cannot claim loss of earning capacity for that time period. Additionally, testimony was ad- *507 dueed at trial that Ms. Rogers could increase her likelihood of getting the type of job if she were able to commute to a neighboring city. We find that Ms. Rogers suffered a loss of earning capacity, but that loss is not at the high end of the figures provided.
Therefore, we set Ms. Rogers’ loss of earning capacity at $29,500. CONCLUSION
The court properly granted the J.N.O.V. because a reasonable jury could not have found the plaintiff was fifty percent at fault. We, however, re-apportion fault assigning the D.O.T.D. 100% liability and Carol Barnes 0% liability. Additionally, this court finds that the jury erred when it refused to award loss of earning capacity to Darlene Rogers. We, therefore, award Darlene Rogers $29,500 for loss of earning capacity. We further find that the jury committed no error in the award of general damages. Consequently, we affirm the general damage awards to both Ms. Barnes and Ms. Rogers, but amend Ms. Roger’s award to add $29,000 for loss of earning capacity.
AMENDED AND AFFIRMED AS AMENDED.