BIANCA O. HARTS AND
WILLIE SHEPHERD

VERSUS

ANDREW EUGENE
DOWNING, MELCO STEEL,
INC., AND TRAVELERS
INDEMNITY COMPANY OF
CONNECTICUT

\* NO. 2019-CA-0620

\* COURT OF APPEAL

\* FOURTH CIRCUIT

\* STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-02678, DIVISION "M"
Honorable Paulette R. Irons, Judge
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*

(Court composed of Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge
Rosemary Ledet)

Suzette P. Bagneris
Emile A. Bagneris, III
THE BAGNERIS FIRM, LLC
2714 Canal Street, Suite 403
New Orleans, LA 70119

    COUNSEL FOR PLAINTIFF/APPELLANT

Andrew D. Weinstock
Linda A. Hewlett
DUPLASS, ZWAIN, BOURGEOIS, PFISTER, WEINSTOCK,
& BOGART, APLC
3838 North Causeway Boulevard, Suite 3160
Metairie, LA 70002

    COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**

**JUNE 24, 2020**

*JCL*

*RLB*

*RML*

This is a tort case. Plaintiff/appellant, Willie Shepherd ("Shepherd"), appeals the March 28, 2019 and May 3, 2019 judgments of the district court and the May 7, 2019 denial of Shepherd's post-trial motions for judgment notwithstanding the verdict, new trial, and/or additur. For the reasons set forth in this opinion, we affirm.

This litigation stems from a March 31, 2017 automobile accident in which a tractor-trailer, making a U-turn, backed into a vehicle owned and operated by Shepherd's fiancée, Bianca Harts ("Harts"). According to the petition for damages, Shepherd was a passenger in Harts' vehicle and sustained neck and back injuries in the accident. The tractor-trailer was operated by Eugene Downing, owned by his employer Melco Steel, Inc., and insured by Travelers Indemnity Company of Connecticut (collectively, "Downing"). Harts settled her claims, and when the case proceeded to trial, Shepherd was the only remaining plaintiff. At trial, the parties stipulated to Downing's liability and $23,765.60 in past medical expenses.

1

On February 13, 2019,[1] at the conclusion of a three-day jury trial, the jury rendered a verdict finding that Downing was solely negligent and that Downing's negligence caused Shepherd's injuries. The jury awarded Shepherd total damages of $56,765.60, which was comprised of $23,765.60 in past medical expenses, $8,000.00 in general damages for past physical pain and suffering, and $25,000.00 for future medical expenses. The jury did not award any damages for past mental anguish and emotional distress, past enjoyment of life, future physical pain and suffering, future mental anguish and emotional distress, or future enjoyment of life. On March 28, 2019, the district court rendered judgment conforming to the jury verdict. The district court also issued an amended judgment dated May 3, 2019. Shepherd filed motions seeking judgment notwithstanding the verdict (JNOV), new trial, and/or additur, in which he argued that the award of damages was unreasonably low and contrary to the evidence at trial. The district court denied the motions on May 7, 2019. This appeal followed.

On appeal, Shepherd sets forth one assignment of error as follows:

The Trial Court erred by denying Mr. Shepherd's post-trial motions and giving deference to the jury's determination of damages, where the jury was clearly confused regarding jury instructions; disregarded the jury instructions; failed to award stipulated damages before admonishment by the Court; disregarded undisputed, uncontroverted testimony in rendering its award; and rendered inconsistent damages awards that were so contrary to the evidence that no rational jury could have reasonably reached such verdicts.

The following standards of review apply herein. A court of appeal may not set aside the jury's finding of fact in absence of "manifest error" or unless it is

_____

[1] Trial took place on February 11, 12, and 13, 2019, though the jury form signed by the foreman is dated "2/13/2018."

2

"clearly wrong." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993)(citing *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989)). The Louisiana Supreme Court set forth a two-prong test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the district court; and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. *Stobart*, *supra* (citing *Mart v. Hill*, 505 So.2d 1120, 1127 (La. 1987)). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart*, *supra*. "[W]here there are two permissible views of the evidence, the fact-finder's choice cannot be manifestly erroneous or clearly wrong." *Serpas v. Tulane Univ. Hosp. & Clinic*, 13-1590, 13-1591, p. 13 (La. App. 4 Cir. 5/14/14), 161 So.3d 726, 736 (quotation omitted).

Louisiana Code of Civil Procedure art. 1811(F) provides that a motion for JNOV may be granted on the issue of liability, on the issue of damages, or both. The Supreme Court set forth the standard for granting a JNOV in *Davis v. Wal-Mart Stores, Inc.*, 00-0445, p. 4 (La. 11/28/00), 774 So.2d 84, 89 (quotation omitted):

> A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for

3

the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. In making this determination, the court should not evaluate the credibility of the witnesses and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

Appellate courts use a two-part inquiry when reviewing the district court's determination to grant or deny a JNOV. *Hammons v. St. Paul*, 12-0346, 12-0347, p. 5 (La. App. 4 Cir. 9/26/12), 101 So.3d 1006, 1010. "First, using the same criteria the trial court uses in deciding whether to grant JNOV, the appellate court must determine if the trial court erred." *Id.* Second, "[a]fter determining that the trial court correctly applied its standard of review as to the jury verdict, the appellate court reviews the JNOV using the manifest error standard of review." *Id.*, 12-0346, 12-0347, p. 6, 101 So.3d at 1010-11.

A motion for a new trial may be joined with a motion for JNOV, or a new trial may be prayed for in the alternative. La. C.C.P. art. 1811(A)(2). "[A] new trial is mandated (1) when the verdict or judgment appears clearly contrary to the law and the evidence, (2) when the party has discovered since the trial, new evidence important to the cause which he could not with due diligence have obtained before or during the trial, and (3) when the jury was bribed or has behaved improperly so that impartial justice has been done." *Adams v. CSX Railroads*, 01-0114, p. 5 (La. App. 4 Cir. 4/20/05), 902 So.2d 413, 416 (citing La. C.C.P. art. 1972). The district court also has discretion to grant a new trial "in any case if there is good ground therefor, except as otherwise provided by law." La. C.C.P. art. 1973.

4

As this Court has stated:

> A motion for a new trial requires a less stringent test than for a JNOV because such a determination involves only a new trial and does not deprive the parties of their right to have all disputed issues resolved by a jury. Although the language is similar between the standards for a JNOV and a new trial, there is a real difference between a finding that no evidence existed for a rational jury to reach a particular result and a finding that a jury could not have reached its conclusion on any fair interpretation of the evidence. In considering whether the verdict was supported by any fair interpretation of the evidence on a motion for new trial, the trial judge is free to weigh the evidence and make credibility determinations, and is not required to view the evidence in the light most favorable to the non-movant as on a JNOV motion.
>
> The standard of appellate review in ruling on a motion for new trial is whether the trial court abused its discretion. A jury verdict cannot be set aside on the grounds that the verdict is contrary to the evidence if it is supportable by any fair interpretation of the evidence.

*Stamps v. Dunham*, 07-0095, pp. 7-8 (La. App. 4 Cir. 9/19/07), 968 So.2d 739, 744-45 (internal citations omitted).

"The standard of review for additur is set forth in La. Code Civ. P. art. 2083(B): '[i]n reviewing a judgment reformed in accordance with a remittitur or additur, the court shall consider the reasonableness of the underlying jury verdict.'" *Stamps*, 07-0095, p. 8, 968 So.2d at 745.[2] "[T]he propriety of an additur depends on whether it would have been proper to grant a new trial." *Magee v. Pittman*, 98-

---

[2] Additur is governed by La. C.C.P. art. 1814, which provides:

> If the trial court is of the opinion that the verdict is so excessive or inadequate that a new trial should be granted for that reason only, it may indicate to the party or his attorney within what time he may enter a remittitur or additur. This remittitur or additur is to be entered only with the consent of the plaintiff or the defendant as the case may be, as an alternative to a new trial, and is to be entered only if the issue of quantum is clearly and fairly separable from other issues in the case. If a remittitur or additur is entered, then the court shall reform the jury verdict or judgment in accordance therewith.

The record does not reflect that the district court found the verdict inadequate or that Downing consented to additur as an alternative to a new trial as required by La. C.C.P. art. 1814.

1164, p. 18 (La. App. 1 Cir. 5/12/00), 761 So.2d 731, 746. "When a jury awards an amount that is lower than the lowest reasonable amount, additur becomes proper." *Accardo v. Cenac*, 97-2320, p. 9 (La. App. 1 Cir. 11/6/98), 722 So.2d 302, 307-08. "Once additur is determined to be proper, the amount awarded on additur should be raised only to the lowest reasonable amount; raising the amount awarded any higher than that is an abuse of the trial judge's discretion." *Id.*, 97-2320, p. 9, 722 So.2d at 308.

With these principles in mind, we first turn to Shepherd's jury confusion argument. "Trial courts are given broad discretion in formulating jury instructions and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law." *Adams v. Rhodia, Inc.*, 07-2110, p. 6 (La. 5/21/08), 983 So.2d 798, 804. "Furthermore, the manifest error standard for appellate review may not be ignored unless the jury charges were so incorrect or so inadequate as to preclude the jury from reaching a verdict based on the law and facts." *Id.*, 07-2110, p. 7, 983 So.2d at 805. "[T]he determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice." *Warren v. Shelter Mut. Ins. Co.*, 16-1647, p. 23 (La. 10/18/17), 233 So.3d 568, 584 (quotation omitted).

At trial, Shepherd made no contemporaneous objection to the jury instructions.[3] Shepherd has not identified any particular instruction that confusing,

---

[3] Consequently, Shepherd is precluded from assigning as error the giving of or the failure to give any instruction, because he did not object to the jury instructions at trial. *See* La. C.C.P. art. 1793(C)("A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the

6

incorrect, inadequate, or missing from the jury instructions as a whole.[4] He argues

instead that the jury instruction on past medical expenses was clear and

unambiguous.[5] Shepherd contends that, despite this clear instruction, the jury was

confused. According to Shepherd's appellant brief, the following events transpired

during jury deliberations, which he argues "should have sent up a red flag to the

Court that the jury was confused":

> At the conclusion of the case, the jury reported to the jury room for deliberations. At the beginning of jury deliberations, the jury informed the Court that it did not understand the Court's Jury Instructions. The Court advised counsel about the jury's confusion. Then, the Court, through its crier, presented the jury with a typewritten copy of Jury Instructions. Shortly, thereafter, the jury submitted a Jury Verdict Form to the Trial Court that found "medical causation" and filled in all lines except for the stipulated past medical bills in the amount of $23,765.60. After further instructions from the Trial Court regarding the stipulations and directives not to leave any lines blank on the Jury Verdict Form and awarding the stipulated past medical bills. The jury awarded Mr. Shepherd several categories of damages which totaled 56,765.60…

jury retires, stating specifically the matter to which he objects and the grounds of his objection….").

[4] Having reviewed the jury instructions as a whole, we do not find that "plain and fundamental" errors exist in those instructions. *See Chicago Prop. Interests, L.L.C. v. Broussard*, 15-0299, p. 4 (La. App. 4 Cir. 10/21/15), 177 So.3d 1074, 1078 (citation omitted)("if jury instructions or interrogatories contain a 'plain and fundamental' error, the contemporaneous objection requirement is relaxed and appellate review is permitted").

[5] That instruction was read to the jury as follows:

> Plaintiff is entitled to recover past medical expenses incurred due to the injury. The burden of proof is on him to prove that more probable than not the medical treatment was necessitated by trauma suffered in the accident. And, when a Plaintiff alleges that medical expenses were incurred and that allegation is supported by a bill, unless there is efficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, [it] is sufficient to support the inclusion of that item in the judgment. You must award the full amount of medical expenses incurred as a result of the accident proven by a preponderance of the evidence. Now, in determining any award that you might make for past or future medical expenses, you should consider the evidence and the opinions of expert witnesses to decide the reasonable value or expense of medical care and treatment, which was or will be reasonable and necessary for Plaintiff's condition.

Downing does not dispute this account. The trial record does not document these events; rather, they are described only in argument of counsel contained within Shepherd's post-trial motions. If the jury expressed any confusion regarding instructions or if the district court provided the jury with additional instructions once deliberations began, no court reporter transcribed these exchanges; and this issue was not adequately preserved in the record for our review. Likewise, the record contains no copy of a jury verdict form in which the jury refused to award the stipulated past medical expenses. Rather, the only verdict form in the record is the one in which the jury awarded $23,765.60 in past medical expenses. The jury awarded the precise amount in stipulated medical specials, and we cannot discern from the record that the jury was confused as to this amount or other amounts awarded.

"An appellant has the duty to present a full record and state clearly the basis of his attribution of error when he appeals a judgment." *Joseph v. Archdiocese of New Orleans*, 10-0659, p. 4 (La. App. 4 Cir. 11/10/10), 52 So.3d 203, 206. "When the record lacks a transcript that is pertinent to an issue raised on appeal, the inadequacy of the record is attributable to the appellant." *Id.* (quotation omitted). Given the lack of any record surrounding jury deliberations, we are unable to review the jury's reasoning. Based on the record lodged in this Court, we find no basis to conclude that jury instructions were erroneous or that the jury was confused or disregarded jury instructions.

In Shepherd's remaining arguments, he asserts that the jury awarded damages that were inconsistent with the evidence. He contends that the district court erred in failing to grant his post-trial motions for JNOV, new trial, and/or additur, in which he sought an increase in both general and special damages.

We now address general damages. Shepherd contends that the jury's general damages award was unreasonably low. At trial, the jury awarded $8,000.00 in general damages, specifically for past physical pain and suffering. The jury awarded no general damages for past mental anguish and emotional distress or past enjoyment of life. The jury likewise did not award any general damages for future physical pain and suffering, future mental anguish and emotional distress, or future enjoyment of life.

"[G]eneral damages are awarded based on evidence showing physical pain and suffering, inconvenience, loss of intellectual gratification, or physical enjoyment and other losses of life or lifestyle." *McBride v. Lichtenstein*, 17-0715, p. 14 (La. App. 4 Cir. 12/5/18), 260 So.3d 658, 669, *writ denied*, 19-0023 (La. 2/25/19), 266 So.3d 298 (quoting *Rogers v. State ex rel. Dep't of Transp. & Dev.*, 00-1424, p. 12 (La. App. 4 Cir. 3/7/02), 813 So.2d 495, 504-05). "The fact finder can also consider a plaintiff's concern for his inability to fulfill family responsibility, the effect on personal esteem, and the mental anguish suffered as a result of the accident." *McBride*, 17-0715, pp. 14-15, 260 So.3d at 669 (citing *Rogers*, *supra*).

9

A jury's assessment of "quantum," or the appropriate amount of damages, is a determination of fact, which is "entitled to great deference on review." *Wainwright v. Fontenot*, 00-0492, p. 6 (La. 10/17/00), 774 So.2d 70, 74.[6] "The jury has the latitude to choose between witnesses, including expert witnesses, and to use such expert testimony together with its own common sense and experience to arrive at its conclusions of fact." *McMaster v. Progressive Sec. Ins. Co.*, 14-0155, pp. 5-6 (La. App. 4 Cir. 10/29/14), 152 So.3d 979, 983 (citations omitted). "The jury's acceptance of part or all of each expert's testimony is within its discretion in fact finding." *Id.*, 14-0155, p. 6, 152 So.3d at 983.

Thus, "the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." *Wainwright*, 00-0492, p. 6, 774 So.2d at 74 (quoting *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1260 (La. 1993)). Therefore, before disturbing an award made by the jury, an appellate court must first find that the jury abused its great discretion. *Wainwright*, *supra* (citing *Coco v. Winston Indus., Inc.*, 341 So.2d 332, 334 (La. 1977)). "Reasonable persons frequently disagree about the measure of damages in a particular case." *Guillory v. Lee*, 09-0075, pp. 15-16 (La. 6/26/09), 16 So.3d 1104, 1117. "It is only when the

---

[6] The Louisiana Supreme Court concluded in *Wainwright* that "a verdict awarding medical expenses yet denying general damages is not *per se* invalid." 00-0492, p. 9, 774 So.2d at 76. Rather, in certain cases, "a jury, in the exercise of its discretion as a factfinder, can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured compensable pain and suffering as a result of the defendant's fault." *Id.*, 00-0492, p. 8, 774 So.2d at 76. The Supreme Court explained that an appellate court reviewing a verdict that awards special damages but no general damages "must ask whether the jury's determination that plaintiff is entitled to certain medical expenses but not to general damages is so inconsistent as to constitute an abuse of discretion." *Id.*

award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award." *Guillory*, 09-0075, p. 16, 16 So.3d at 1117 (quoting *Youn*, 623 So.2d at 1261).

At trial, the jury considered the following evidence.[7] Shepherd was 40 years old at the time of the accident and 42 years old at the time of trial. Shepherd refused medical treatment at the scene of the accident, but he testified that a few hours later he experienced increasing headaches and neck and back pain. His fiancée, Harts, corroborated this testimony. Four days after the accident, Shepherd sought treatment from Dr. Fritz Fidele, a chiropractor, with whom Shepherd treated for one week. Dr. Fidele's discharge report noted that Shepherd's condition had resolved. Three weeks later, Shepherd began treatment at Metropolitan Health Group ("MHG") where he was seen by an internal medicine physician and nurse practitioner for five months and underwent physical therapy for six months. During this treatment, Shepherd complained of pain ranging from 8/10 to 10/10[8] and was prescribed Tramadol, Flexeril, and Ibuprofen. However, Shepherd did not introduce any evidence of pharmacy records or bills showing that he filled these prescriptions.

---

[7] The jury heard testimony from the following witnesses: Shepherd; his fiancée Harts; treating pain management physician Dr. Eric Lonseth; Metropolitan Health Group director Dr. William Alden; and defense neurosurgery expert Dr. Bradley Bartholomew.

[8] As discussed in Dr. Alden's and Dr. Bartholomew's testimony, a patient is asked to rate the level of his pain on a scale of 0 to 10, with 0/10 being zero pain and 10/10 being the worst pain.

MHG referred Shepherd for MRIs of the cervical and lumbar spine, which revealed disc bulges or herniations[9] at C3-4, C4-5, C5-6, L4-5, and L5-S1 with a high intensity area suspicious for an annular tear at L4-5. Defense expert neurosurgeon Dr. Bradley Bartholomew testified at trial that he reviewed only the MRI films, but did not examine Shepherd or review any other medical records. Dr. Bartholomew testified that both the cervical and lumbar MRI films were consistent with a 41-year-old man. He indicated that the MRIs showed dehydration of the discs, which is a sign of aging. In Dr. Bartholomew's opinion, neither of the MRIs showed findings that were objectively related to trauma or from which he could "rule out" trauma. Dr. William Alden, an internal medicine physician, testified as director of MHG but did not personally examine Shepherd. Dr. Alden conceded that a two-millimeter disc protrusion was not unusual in a male over 40 years old, but he opined that both the cervical and lumbar findings were related to Shepherd's accident based on the history given by the patient. Based on the MRIs, the MHG medical providers, as well as the reading radiologist Dr. Bernard Landry, recommended that Shepherd undergo evaluation by an orthopedic surgeon and neurosurgeon. Shepherd declined to see either. He testified that his reasoning was that he did not want surgery.

Eight months after the accident, Dr. Eric Lonseth, a pain management physician, evaluated Shepherd, who complained of pain ranging from 8/10 to

---

[9] There were differences of opinion among the physicians who reviewed the MRIs as to whether the cervical findings were herniations or bulges, though all physicians noted a herniation at L5-S1 and a probable tear at L4-5.

12

10/10. Dr. Lonseth recommended cervical epidural steroid injections ("CESIs") and prescribed two doses of Valium to help with pre-procedure comfort. Dr. Lonseth did not prescribe any narcotic pain medication due to Shepherd's history of sleep apnea. After Shepherd then underwent his first CESI, he was instructed to return to Dr. Lonseth for evaluation in three weeks; however, he did not return for three months. Shepherd testified that Dr. Lonseth was out of town during this three-month period, which Dr. Lonseth denied in his trial testimony. At Shepherd's next appointment, he reported 70% pain relief to his neck and underwent a second CESI. At a follow-up appointment, Shepherd reported 40% pain relief and was instructed to return for evaluation in six weeks. However, Shepherd did not return to Dr. Lonseth for nearly nine months – one month before trial – when he was evaluated for a lumbar epidural steroid injection ("LESI"). The LESI was scheduled the week after trial. Shepherd testified that his gaps in treatment were because he was afraid of needles but "had to do it because [he] was in pain."

Shepherd testified, however, that the effects of the injections "wore off" after three weeks. He also testified that the CESIs gave him terrible side effects including night sweating and sleeplessness. He testified that he did not tell Dr. Lonseth of these complaints. Shepherd also testified that he did not plan to undergo any more ESIs.

Shepherd testified that before the accident, he worked at a hospital and that his job entailed cleaning, waxing, and stripping floors. He stated that, due to the physically strenuous nature of the job, he quit two weeks after the accident and was

continually unemployed through the time of trial.[10] Shepherd testified about the personal fulfillment that he once received from his work and his anger and distress while not working or being able to provide for his family. He and Harts both testified about Shepherd's mood swings and their bickering with each other. Shepherd nevertheless testified that he and Harts were getting married after trial.

Shepherd and Harts testified that Shepherd has trouble sleeping, is unable to perform most household chores, and cannot participate in most hobbies that he enjoyed before the accident including bowling, fishing, second line dancing, and playing basketball with his children. Both, however, were cross-examined regarding a Facebook photograph, taken nine months after the accident, of Shepherd participating in a second line parade while wearing a large headdress. Shepherd admitted that he participated in the parade, which took place one week before his first CESI. Shepherd denied that he was dancing and stated that he was riding on a float as "king" of the parade. No float is visible in the photograph in evidence. Harts corroborated Shepherd's testimony that he was king of the second line group. She then testified that Shepherd was able to "second line," though she attempted to correct herself on subsequent testimony that he had not "second lined" since the accident.

Considering the evidence of record, we find no showing that the jury ignored "uncontroverted evidence" as Shepherd suggests. Rather, in viewing the medical evidence at trial and evaluating the credibility of witnesses, the jury could have

---

[10] Per the parties' agreement, Shepherd made no claim for lost wages at trial; and lost wages are not an issue in this appeal.

reasonably concluded that Shepherd underwent periodic, though ultimately sporadic, medical treatment related to the accident and that he was no longer in any substantial continued pain or experiencing any adverse changes to his lifestyle. "A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at a contrary verdict." *Davis*, 00-0445, p. 4, 774 So.2d at 89 (quotation omitted). That is not the case here. "A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light." *Davis*, 00-0445, p. 10, 774 So.2d at 93 (citations omitted). "Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence." *Id.* Similarly, an additur is used as an alternative to new trial, and its "propriety … depends on whether it would have been proper to grant a new trial." *Magee*, 98-1164, p. 18, 761 So.2d at 746. We find that the jury's general damages award is supportable by a fair interpretation of the evidence and is not manifestly erroneous or clearly wrong. We cannot say the district court erred in failing to grant Shepherd's post-trial motions.

We now address future medical expenses. Shepherd argues that the jury award of $25,000.00 in future medical expenses was unreasonably low. An award of future medical expenses is a form of special damages. *McBride*, 17-0715, p. 32, 260 So.3d at 678. "Special damages are those which have a 'ready market value,' such that the amount of the damages theoretically may be determined with relative

certainty…" *Kaiser v. Hardin*, 06-2092, p. 11 (La. 4/11/07), 953 So.2d 802, 810 (citations omitted). "Future medicals need not be established with mathematical certainty although a plaintiff must prove that it is more probable than not that expenses will be incurred." *McBride*, 17-0715, p. 32, 260 So.3d at 678 (quoting *Molony v. USAA Property and Casualty Ins. Co.*, 97-1836, pp. 2-3 (La. App. 4 Cir. 3/4/98), 708 So.2d 1220, 1221). "Although a plaintiff is not required to prove the exact value of the necessary expenses, some evidence to support the award must be contained in the record." *Id.*, 17-0715, p. 32, 260 So.3d at 678.

The jury considered the following evidence relative to Shepherd's anticipated future medical care. At the time of trial, Shepherd's only treating physician was Dr. Lonseth, who recommended a course of ESIs. Dr. Lonseth testified that if Shepherd was receiving "good benefits" from the injections, he would continue to recommend ESIs; and he would provide Shepherd 2 to 3 CESIs per year. Shepherd scheduled an appointment for his first LESI on the week after trial. Dr. Lonseth testified that the typical ESI in his office cost $5,100.00 per injection. Dr. Lonseth also testified that he may recommend medial branch blocks in the future. If the medial branch block is positive, then he would perform a rhizotomy. Dr. Lonseth testified that the projected cost of a medial branch block at his office is $17,450.00. Shepherd thus argues:

> If Mr. Shepherd had the projected three (3) cervical epidural steroid injections per year, that would amount to $15,300.00 per year. If Mr. Shepherd had the projected two (2) cervical epidural steroid injections per year, that would amount to $10,200.00 per year. If he only had one (1) cervical epidural steroid injections per year, that would amount to $5,100.00 per year. Extending that out to age seventy (70)

this would total $1,071,000.00 (for 3 per year); $714,000.00 (for 2 per year); and $357,000.00 (for 1 per year). The same math applies to the lumbar epidural steroid injections. For Mr. Shepherd to undergo the two medial branch blocks as ordered by his treating physician that would cost an additional $34,900.00.

Nevertheless, Shepherd testified that he experienced significant side effects from the CESIs and that he did not intend to have any further injections. Following the second CESI, Shepherd did not return to Dr. Lonseth for nine months. Shepherd also testified that the pain relief from the CESIs lasted only three weeks, while he told Dr. Lonseth that he experienced 75% relief from the first injection and 40% relief from the second injection. Dr. Lonseth testified that he would not continue to recommend ESIs if Shepherd did not benefit from the injections, though Dr. Lonseth may still offer testing with medial branch blocks and, if positive, a rhizotomy. Dr. Lonseth did not prescribe any narcotic pain medication. Shepherd declined evaluation with an orthopedic surgeon and neurosurgeon. No physician has recommended surgery.

Considering this evidence, the jury could have reasonably concluded that Shepherd does not intend to seek any substantial treatment and that only limited future medical care is needed for Shepherd's condition. We cannot say that the evidence was so strongly or overwhelmingly in Shepherd's favor that no reasonable jury would have awarded only $25,000.00 in future medical expenses. We find, as the district court did, that the jury's verdict is supportable by a fair interpretation of the evidence. As the jury's findings of fact were reasonable and were not clearly wrong, we find no error in the district court's denial of Shepherd's post-trial motions.

Accordingly, for the reasons discussed herein, we affirm the judgments of the district court.

**AFFIRMED**